### In the Interest of K.A.T., JR., Appellant.

Superior Court of Pennsylvania.

Argued Aug. 22, 2012.
Filed June 11, 2013.

---

Suzanne M. Swan, Public Defender and Daniel J. Eichinger, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney and Amy E. Constantine, Assistant District Attorney, Pittsburgh, for Commonwealth, participating party.

BEFORE: MUSMANNO, J., BOWES, J., and WECHT, J.

OPINION BY WECHT, J.

K.A.T. ("Appellant"), a minor, appeals the adjudication of delinquency and disposition order entered in the Court of Common Pleas of Allegheny County on May 10, 2011, after Appellant was adjudicated delinquent of simple assault.[1] In this direct appeal, Appellant raises two claims of ineffective assistance of counsel, as well as a challenge to the sufficiency of the evidence. We affirm.

The juvenile court reported the salient facts of this case as follows:

Nathan Toliver resides in Coraopolis, Pennsylvania. On February 12, 2011, Mr. Toliver went to Barto's Bar on Fifth Avenue in Coraopolis where he purchased two 40[-]ounce bottles of beer to take home. He had not had any alcohol at the bar. As he was walking home, he noticed a shadow or an individual walking behind him. The individual then asked Mr. Toliver if he had a "square," which [Mr. Toliver] understood to mean a cigarette.

There was a distance of about 23 feet between the individuals. Mr. Toliver then turned around to answer no and the other individual began walking faster. This made Mr. Toliver feel uncomfortable and therefore Mr. Toliver stood there and waited for the individual to pass. At that point, Mr. Toliver was grabbed from behind and turned around. Mr. Toliver was then only four or five inches away from the assailant's face. At that time, a light was shining on the actor's face. The assailant then pepper sprayed Mr. Toliver in the face. The assailant then started demanding "Give up the money" over and over again, getting louder each time. Mr. Toliver then began to use his beer bottles to swing at the assailant since he was unable to see because of the pepper spray. Mr. Toliver then returned to the bar and told the individuals at the bar what had happened and they escorted him to the bathroom to wash his face. Mr. Toliver called 911 from the bathroom.

When the police arrived at the scene, Mr. Toliver was still suffering symptoms from the pepper spray. He was however able to describe the assailant as a light-skinned black male, on the young side, thin and tall. Mr. Toliver was treated by the ambulance at the scene. Mr. Toliver was then escorted home by the police.

About 10 or 15 minutes after returning home, the police officers called Mr. Toliver about making an identification, this was approximately a half an hour after

---

1. 18 Pa.C.S. § 2701(a)(1).

the incident. Once outside the station, Mr. Toliver was told the importance of being absolutely certain that the person he [identified] is the actual perpetrator. Mr. Toliver believed that he was going to be shown photos. When Mr. Toliver entered the police station, he saw one civilian male and a civilian female that appeared to be mother and son. As soon as Mr. Toliver heard the civilian male speak, he identified the male as the perpetrator. This identification was based both upon both [sic] a recognition of the male's face and voice. The male that Mr. Toliver identified that night was the same male he identified in court as [Appellant].

Officer John Michael Haring of the Coraopolis Police Department then testified. At approximately 1:03 a.m., he was sent to Barto's Bar on Fifth Avenue in Coraopolis where he encountered the victim. It was apparent that the victim had suffered some sort of aerosol spray to his face. Based upon information received from the victim, Officer Haring did locate two broken 40-ounce bottles across the street from the bar. An ambulance arrived and Officer Haring made sure the victim was treated. As part of the investigation, [a police officer] viewed surveillance video at the Uni–Mart convenience store which is in close proximity to where the incident occurred. An individual on that videotape matched the description of the perpetrator given by the victim.

About 20 to 25 minutes after the officers arrived on the scene, they received a call from dispatch regarding a witness to the incident. The witness who came forward was [Appellant]. When police saw [Appellant], they noticed that he closely resembled the description given by the victim and the person on the surveillance tape. A copy of the tape was not able to be made and was unavailable for court because it was taped over. During the interview with [Appellant], he indicated to the police that he was going to go to the Uni–Mart to purchase chocolate milk. [Appellant] indicated to the police that he was about to leave for the Uni–Mart [when] he saw an altercation between a couple of males and believes that beer bottles were thrown. After the scuffle was over, he went to the Uni–Mart to make a purchase. When he went home he changed black hoodies. [Appellant] was asked to go to the station to give a written witness statement. Outside of the station, Officer Haring [indicated] that he told Mr. Toliver that a possible suspect was there and Mr. Toliver must be 100 percent certain if he is going to make an identification. Mr. Toliver then identified [Appellant] at the station.

[Appellant] then testified. The minor indicated that he had been at home with friends when he became thirsty and was craving chocolate milk. At that point he decided to go to the Uni–Mart to purchase some milk. The minor indicated as he was about to leave the house, he heard people arguing or talking to each other and glass break. The minor also noted that it was windy and he went back inside to change into a different hooded sweatshirt. The minor then [left] the house and [did] not see anyone, the street[s] are empty. He entered the Uni–Mart and was unable to purchase the chocolate milk because he only wanted a pint and they did not have any. Afterward he continued to walk home. After arriving home, [Appellant] received a call from his boss, Richard Kuster, indicating that he had seen the minor's picture on a surveillance tape at the Uni–Mart where the police were watching the video. It was then that the minor's mother called 911 and re-

ported what the minor had seen earlier that night. [Appellant] then admitted that he and his mother only called the police because [Appellant] was concerned that he would be implicated in the crime.

Officer Haring testified in rebuttal that he in fact saw smaller containers of chocolate milk in the Uni–Mart on the night in question. Officer Haring also stated that he did not smell any lingering odor of alcohol or pepper spray on the minor when he met him.

Trial Court Opinion ("T.C.O."), 9/28/2011, at 1–5 (citations to notes of testimony omitted).

On May 10, 2011, following a delinquency hearing, Appellant was adjudicated delinquent of simple assault.[2] Thereafter, Appellant was placed on probation, ordered to pay the costs associated with the adjudication, and directed to serve five hours of community service. Notably, no post-dispositional motions were filed.

On June 7, 2011, Appellant filed a notice of appeal. On June 9, 2011, the juvenile court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On August 3, 2011, Appellant timely complied. In response, on September 28, 2011, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises three issues for our consideration:

1. Was prior trial counsel ineffective for failing to file a pretrial motion to suppress Toliver's pretrial identification of K.A.T., where the identification was made during a highly suggestive procedure, the equivalent of a one man lineup, and the circum-

stances indicated that the identification was unreliable?

2. Was prior trial counsel ineffective for failing to object to inadmissible hearsay evidence, the admission of which proved crucial in the trial court's adjudicating K.A.T. delinquent of simple assault?

3. Was the evidence presented during K.A.T.'s adjudicatory hearing sufficient for the trial court to adjudicate K.A.T. delinquent of simple assault?

Brief for Appellant at 4.

▪ We begin with Appellant's sufficiency claim because, if successful, it would moot Appellant's ineffective assistance of counsel claims. *See Commonwealth v. Yanoff,* 456 Pa.Super. 222, 690 A.2d 260, 263 (1997) (the proper remedy for a successful sufficiency claim is discharge, not a new trial). Appellant purports to challenge the sufficiency of the evidence presented at trial to sustain Appellant's delinquency adjudication for simple assault. Appellant concedes that "there may have been sufficient evidence that *someone* attempted to cause or 'intentionally, knowingly or recklessly' caus[ed] bodily injury to another," but contends that "the Commonwealth did not prove, beyond a reasonable doubt, that [Appellant] was the perpetrator of this crime." Brief for Appellant at 31.

Appellant admits that there were two specific items of evidence offered to prove that Appellant was the perpetrator of the assault: (1) the victim's identification of Appellant at the police station; and (2) the image of an actor who fit Appellant's description in the convenience store surveillance video. Appellant contends that the victim's identification was marred by the suggestiveness of the identification procedure and that the surveillance video was

---

**2.** Appellant was found not to be delinquent of robbery, 18 Pa.C.S. § 3701(a)(1)(i), possessing instrument of crime, 18 Pa.C.S. § 907(a), and harassment, 18 Pa.C.S. § 2709.

not sufficiently clear to identify him. However, Appellant argues that, even if the person in the surveillance video was Appellant, that evidence was insufficient to prove that Appellant was the perpetrator of the assault. According to Appellant, that evidence merely placed Appellant at or near the scene of the crime, but did not prove beyond a reasonable doubt that Appellant committed the assault.

Appellant notes that, when Appellant met with the police shortly after the incident occurred, he did not smell of pepper spray or alcohol. The victim testified that the assailant used pepper spray to blind him, and that the victim threw beer bottles at the assailant to fend off the attack. The lack of any odor of either pepper spray or alcohol demonstrated that the Commonwealth failed to prove beyond a reasonable doubt that Appellant was the perpetrator.

■ Our standard of review in a sufficiency of the evidence challenge is well-settled:

> In reviewing sufficiency of evidence claims, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all the elements of the offense. Additionally, to sustain a conviction, the facts and circumstances which the Commonwealth must prove[ ] must be such that every essential element of the crime is established beyond a reasonable doubt. Admittedly, guilt must be based on facts and conditions proved, and not on suspicion or surmise. Entirely circumstantial evidence is sufficient so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter

of law no probability of fact may be drawn from the combined circumstances. The fact[-]finder is free to believe all, part, or none of the evidence presented at trial.

*Commonwealth v. Moreno,* 14 A.3d 133, 136 (Pa.Super.2011) (internal citations omitted). In every criminal case, "[p]roof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction." *Commonwealth v. Hickman,* 453 Pa. 427, 309 A.2d 564, 566 (1973). However, identification evidence "need not be positive and certain to sustain a conviction." *Commonwealth v. Jones,* 954 A.2d 1194, 1197 (Pa.Super.2008). A witness may identify an alleged perpetrator from his voice alone, and the weight to be assigned to that identification is a question for the trier of fact. *Jones,* 954 A.2d at 1197.

Appellant focuses primarily upon the surveillance video, and ignores the remainder of the evidence. However, when viewing the evidence as a whole and in the light most favorable to the Commonwealth as verdict winner, the facts presented in the instant case establish proof beyond a reasonable doubt that Appellant was the perpetrator of the assault upon the victim.

The evidence established that the victim was grabbed from behind and turned around by an assailant. At the time, the victim was only inches from the assailant's face, which was illuminated by a nearby light. The assailant sprayed the victim in the face with pepper spray. The victim escaped the attack only by throwing beer bottles at the assailant. The victim later was taken to the police station, where Appellant was sitting with his mother. There, the victim was able to hear Appellant speak. From this, the victim immediately identified Appellant as his assailant. The victim also identified Appellant in open court at trial. The trial court, as

fact-finder, credited these identifications and weighed them accordingly. Viewing all of this evidence in the light most favorable to the Commonwealth, as we must, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that Appellant was the assailant.

Before we can address the merits of the ineffective assistance of counsel claims, we must confront procedural issues apparent in this case and decide whether Appellant's ineffectiveness claims are properly before this Court. First, we must address whether Appellant's ineffective assistance of counsel claims are cognizable in this direct appeal. It is well-settled that, as a general rule, such claims should be raised during collateral review in a petition pursuant to the Post–Conviction Relief Act ("PCRA").[3] *See Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726, 738 (2002). However, this is a juvenile case, to which the PCRA has no application. *In re A.J.*, 829 A.2d 312, 315 n. 3 (Pa.Super.2003). Consequently, the *Grant* directive also has no application. *A.J.*, 829 A.2d at 315 n. 3. Because of a juvenile's lack of access to collateral review, we have concluded that it is necessary to review a juvenile's ineffective assistance of counsel claims on direct appeal, when properly raised. *In re B.S.*, 831 A.2d 151 (Pa.Super.2003). In *B.S.*, we explained the necessity of this rule as follows:

> In *Grant*, the Supreme Court held that as a general rule, ineffective assistance of counsel claims should be held for collateral review. [813 A.2d at 728]. This review is most commonly a petition under the [PCRA]. 42 Pa.C.S.A. §§ 9541, *et seq.* As this is a juvenile case, and not a criminal one, *Grant* does not apply. [*A.J.* 829 A.2d at 315 n. 3]. Practical difficulties in applying *Grant* persuade us that to apply the proce-

dures suggested by *Grant* to juvenile cases would be improper. Our Supreme Court's decision in *Grant* is quite clearly focused towards the treatment of ineffectiveness claims of criminal defendants. While the Court uses the broader term "collateral relief" and "collateral proceedings," it speaks of the PCRA often and uses the term interchangeably with the above broader terms. *See generally Grant*, 813 A.2d 726. The collateral relief it is quite clearly referring to is a petition under the PCRA. The PCRA, however, does not apply to juveniles. *Matter of J.P.*, 573 A.2d 1057 [ (Pa.Super.1990) ]; 42 Pa.C.S.A. § 6354(a) (An order of delinquency "is not a conviction of a crime and does not impose any civil penalty ordinarily resulting from a conviction."); *see also In Interest of DelSignore*, 249 Pa.Super. 149, 375 A.2d 803, 806 n. 3 (1977) ( [Post–Conviction Hearing Act] did not apply to juveniles). Nor does the Juvenile Act, 42 Pa.C.S.A. §§ 6301, *et seq* [.], provide for any alternative collateral relief for those judged delinquent. The absence of a collateral proceeding would require juveniles to rely on a writ of habeas corpus in order to effectuate an ineffective assistance of counsel claim. 42 Pa.C.S.A. §§ 6501, *et seq.* This proceeding, however, is limited to those juveniles who have been detained. 42 Pa. C.S.A. § 6503; *U.S. ex rel. Kirk v. Kirkpatrick*, 330 F.Supp. 821 (E.D.Pa.1971). Furthermore, the writ is an extraordinary remedy and will not be entertained when other remedies exist. *Commonwealth ex rel. Paulinski v. Isaac*, 483 Pa. 467, 397 A.2d 760 (1979). As such, a juvenile's attempt to initiate a collateral proceeding would often be frustrated and his attempt to litigate an ineffective-

---

**3.** 42 Pa.C.S. §§ 9541–46.

ness of counsel claim futile. We must therefore address appellant's ineffectiveness claim here, on direct appeal. *C.f. In the Interest of S.W.*, 781 A.2d 1247, 1249 (Pa.Super.2001) (In a termination of parental rights case, "[a]ny determination as to ineffectiveness of counsel must be raised expeditiously in the context of the original appeal, as a collateral attack by post-decree petition and/or appeal, after normal appeals have been exhausted is not permissible.").

*B.S.*, 831 A.2d at 154 (citations modified). Accordingly, Appellant's ineffectiveness claims unquestionably are cognizable on direct appeal.

■ Having so determined, we also must consider our principles of preservation and waiver. Instantly, Appellant did not preserve his ineffective assistance of counsel claims in the trial court, nor did he preserve them by filing a Pa.R.J.C.P. 620 post-dispositional motion. Rather, Appellant raised these claims for the first time during this appeal. Facially, this practice would run afoul of our well-settled, mandatory preservation principles. *See* Pa. R.A.P. 302(a) (issues not raised by an appellant in the lower court are waived and cannot be raised for the first time on appeal). Typically, our preservation requirements apply to juvenile proceedings. *See In re R.N.*, 951 A.2d 363, 371 (Pa.Super.2008) (citing *DelSignore*, 375 A.2d at 805–06) ("In juvenile proceedings, appellants must preserve issues on appeal by raising them in the trial court; otherwise, they are waived.").

However, it long has been the case that juveniles are permitted to raise ineffectiveness claims for the first time in a Pa. R.A.P. 1925(b) statement, without otherwise preserving those issues first before the trial court. *A.J.*, 829 A.2d at 315 n. 3. Our Supreme Court's recent decision in *In re D.S.*, 614 Pa. 650, 39 A.3d 968 (2012), confirms our belief that this entrenched principle remains in effect, despite our general waiver rules. In *D.S.*, the Supreme Court was confronted with a challenge to the sufficiency of the evidence claim in a juvenile case. The Commonwealth contended that the issue was waived pursuant to Pa.R.A.P. 302(a), as the juvenile had not presented the claim to the trial court in the first instance. *D.S.*, 39 A.3d at 972. We discussed the *D.S.* Court's rejection of the Commonwealth's waiver argument very recently in *In re J.B.*, 69 A.3d 268 (Pa.Super.2013):

> Our Supreme Court disagreed [with the Commonwealth's argument] for three reasons. First, because Pa.R.J.C.P. 620 makes the filing of post-adjudication motions optional, "the failure to raise issues in such a motion may not be sanctioned." *D.S.* [614 Pa. 650], 39 A.3d at 973. Second, unlike adult defendants in criminal proceedings, juvenile defendants cannot seek recourse under the Post–Conviction Relief Act, 42 Pa.C.S. §§ 9541–46 ("PCRA"), because the PCRA does not apply to juvenile proceedings. *See* 42 Pa.C.S. § 9543(a)(1) (petitioner must be convicted of a crime). For this reason, a finding of waiver for failure to preserve a sufficiency claim in the juvenile court would be a harsher result than for a similarly situated adult criminal defendant. *D.S.* [614 Pa. 650], 39 A.3d at 973. Third, the juvenile court may provide its analysis of the sufficiency challenge in its Pa.R.A.P. 1925(a) opinion, and thus there is no impediment to an appellate court's review of a sufficiency claim in the first instance. *Id.*

*J.B.*, 69 A.3d at 275–76 (citations modified).

The same reasoning that compelled the Supreme Court's decision in *D.S.* must be applied to ineffective assistance of counsel issues. Because the PCRA is not available to juveniles, and because no juvenile coun-

terpart exists, ineffective assistance of counsel claims bear no material distinction from the sufficiency claim discussed by our Supreme Court in *D.S.* The only available mechanism to raise ineffective assistance of counsel claims is Pa.R.J.C.P. 620. However, the Supreme Court made clear that an appellant cannot be sanctioned for failing to raise these claims in a Pa.R.J.C.P. 620 motion, because such a motion is, by the express terms of the rule, optional. *D.S.*, 39 A.3d at 973. If we were to apply our waiver principles to ineffective assistance of counsel claims, the juvenile would not have the benefit of the PCRA, or any other meaningful collateral mechanism, either to raise those claims for the first time or to seek a remedy for failing to properly preserve them in the first instance.

Finally, as stated in *D.S.* and *J.B.*, the trial court can address these claims in its Pa.R.A.P. 1925(a) opinion. Thus, the trial court's ability to review these claims in the first instance, as required by Pa.R.A.P. 302(a), would not be impeded. Applying our waiver principles, including Pa.R.A.P. 302(a), to the ineffective assistance of counsel claims raised for the first time on appeal would uniquely sanction a juvenile by denying him access to a remedy available to adults, a practice that our Supreme Court clearly prohibited in *D.S.* Thus, we will not deem waived an ineffective assistance of counsel claim that is raised for the first time on appeal.

■ The final procedural impediment that we must address in this case is the fact that Appellant's trial and appellate counsel are lawyers with the Allegheny County Public Defender's Office. "[A]s a general rule, a public defender may not argue the ineffectiveness of another member of the same public defender's office since appellate counsel, in essence, is deemed to have asserted a claim of his or her own ineffectiveness." *Commonwealth v. Ciptak*, 542 Pa. 112, 665 A.2d 1161, 1161–62 (1995). When this occurs, we will remand for the appointment of new counsel except: (1) when it is clear from the record that counsel was ineffective, or (2) when it is clear from the record that the ineffectiveness claim is meritless. *Commonwealth v. McBee*, 513 Pa. 255, 520 A.2d 10, 13 (1986). Therefore, we do not automatically remand for the appointment of counsel in every instance when this problem occurs. Instead, we must consider the merits of the two ineffective assistance of counsel claims raised by Appellant. Essentially, per *McBee*, if we are unable to ascertain whether either claim clearly has merit sufficient to warrant relief, or clearly lacks merit such that no relief is due, then we must remand this case for the appointment of new counsel and an evidentiary hearing.

With regard to ineffectiveness claims, counsel is presumed to be effective, and the appellant bears the burden of proving otherwise. *In re A.D.*, 771 A.2d 45, 50 (Pa.Super.2001). In reviewing ineffectiveness claims:

> [W]e must first consider whether the issue underlying the charge of ineffectiveness is of arguable merit. If not, we need look no further since counsel will not be deemed ineffective for failing to pursue a meritless issue. If there is arguable merit to the claim, we must then determine whether the course chosen by counsel had some reasonable basis aimed at promoting the client's interests. Further, there must be a showing that counsel's ineffectiveness prejudiced Appellant's case. The burden of producing the requisite proof lies with Appellant.

*Id.* (citations omitted).

■ Appellant first argues that trial counsel was ineffective for failing to file a pre-trial motion to suppress the identifica-

tion, which Appellant contends was unduly suggestive and unreliable. The victim was brought into a police station, where Appellant was located with his mother. Appellant and his mother were the only civilians in the station at that time. The victim identified Appellant based upon his face and his voice. Trial counsel failed to file a suppression motion challenging what Appellant argues was an unconstitutionally suggestive identification procedure.

Appellant argues that, because the identification was in effect a single-person line-up, because it occurred at the police station and not at the scene, and because police officers told the victim that they thought they had the perpetrator, the circumstances were unnecessarily suggestive. Appellant maintains that, considering the totality of the circumstances (such as the fact that Appellant and his mother were the only people in the station not wearing a police uniform), the identification was clearly unconstitutional. The victim testified that he only got a view of the perpetrator for a short time, and admitted that he could not see the person very clearly. The victim gave only a vague description of the perpetrator: light skinned, wearing glasses, same height as the victim, and thin. The victim did not describe the clothing the perpetrator was wearing, or even the color of any garment. The victim did not mention the facial hair, hair color, or the specific age of the perpetrator. Appellant further argues that the lighting at the scene was poor. As noted, the victim alleged that the perpetrator wore glasses, but there was no evidence presented at trial demonstrating that Appellant actually wore or wears glasses. Thus, Appellant argues that the identification was unconstitutional, and that the claim has arguable merit for ineffective assistance of counsel purposes. Appellant posits that trial counsel could not have a reasonable basis for not filing the motion because the identifi-

cation was the central piece of evidence at trial, and because there would be no reasonable basis not to seek its exclusion. Finally, Appellant maintains that he was prejudiced because, without the identification, there was insufficient evidence to prove Appellant guilty of simple assault.

We must first determine whether Appellant's claim underlying the ineffectiveness charge has arguable merit. In *Commonwealth v. Moye,* 836 A.2d 973 (Pa.Super.2003), we set forth the principles that guide us in considering the alleged suggestiveness of a one-on-one, out-of-court identification:

"In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." *McElrath v. Commonwealth,* 405 Pa.Super. 431, 592 A.2d 740, 742 (1991). The purpose of a "one on one" identification is to enhance reliability by reducing the time elapsed after the commission of the crime. *Commonwealth v. Bullock,* 259 Pa.Super. 467, 393 A.2d 921 (1978). "Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors." *McElrath,* 592 A.2d at 742. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: "the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation." *McElrath,* 592 A.2d at 743 (citation omitted). The corrupting effect of the suggestive identification, if any, must be weighed against these factors.

*Commonwealth v. Sample,* 321 Pa.Super. 457, 468 A.2d 799 (1983). Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification. *Commonwealth v. Brown,* 417 Pa.Super. 165, 611 A.2d 1318 (1992).

*Moye,* 836 A.2d at 976 (citing *Commonwealth v. Meachum,* 711 A.2d 1029, 1034 (Pa.Super.1998)) (citations modified); *see also Commonwealth v. Wade,* 33 A.3d 108, 114 (Pa.Super.2011).

The points raised by Appellant are not without logical appeal. The victim, having recently suffered from a pepper spray blast to the eyes and face, was brought to a police station to identify the alleged perpetrator of the attack against him. The victim was told that he was being taken to the station to make an identification. When he entered the station, Appellant and his mother were the only two civilians in the room. Certainly, the fact that the identification occurred in a police station with Appellant and his mother being the only civilians among police officers is disconcerting. Facially, this procedure constitutes a special element of unfairness that militates in favor of unconstitutional suggestiveness.

However, when we consider the totality of the circumstances, as we must, other factors militate in favor of the Commonwealth. Although the assault was brief in duration, the victim stood face-to-face with his assailant before being pepper-sprayed, and was able to get a good look at that assailant. Notes of Testimony ("N.T."), 5/19/2011, at 6. Thus, the victim had a meaningful opportunity to observe Appellant. Though not perfect, the victim provided a reasonably accurate description of Appellant. The victim described Appellant as a light-skinned black male with glasses, approximately the same height as the victim, thin, and younger in age. *Id.* at 9–10. Moreover, the identification occurred within a short period of time after the assault. Indeed, approximately thirty minutes after the assault, the victim was contacted by the police and taken to the police station to make an identification. *Id,* at 12.

While these facts weigh in favor of the Commonwealth, we cannot say, without more, that they overcome entirely the intrinsic suggestiveness of the police station identification that occurred here. However, the record reveals one other aspect of the identification that ameliorates the facial subjectiveness of the circumstance in which the victim identified Appellant as his assailant: The identification was based not upon appearance, but on the victim's initial recognition of Appellant's voice. Thus, notwithstanding the fact that the victim had reason to believe that he would encounter the suspect in the police station, the manner in which the victim recognized Appellant leaves this claim without arguable merit.

Before the assault commenced, Appellant asked the victim for a cigarette. *Id,* at 6. Shortly thereafter, the victim was pepper sprayed, causing him to lose the ability to see Appellant. During that period, Appellant repeatedly stated, "Give up the money." *Id.* at 7. The victim indicated that Appellant uttered this remark approximately five times. *Id.* Thus, the victim had ample opportunity to hear Appellant's voice. When the victim was at the police station, Appellant was asked by a police officer if he knew or remembered the victim. Appellant said only the word "no." Hearing Appellant's voice, the victim immediately identified Appellant as his assailant. The victim testified at trial that "whenever I heard the voice, I mean the police officer told me I had to be 100[-]percent certain. But when I heard the voice,

I was instantly 300[-]percent certain." *Id.* at 15.

■ It is well-settled that "[a] witness may testify to a person's identity from his voice alone." *Commonwealth v. Fromal,* 392 Pa.Super. 100, 572 A.2d 711, 716 (1990) (citing *Commonwealth v. Woodbury,* 329 Pa.Super. 34, 477 A.2d 890, 893 (1984)); *see Jones,* 954 A.2d at 1197. The victim had multiple opportunities to hear Appellant's voice during the assault. The victim identified Appellant based upon the sound of his voice. The victim did so with absolute certainty. This voice identification, when considered in conjunction with the other factors that militate in favor of the Commonwealth, clearly overcomes any suggestiveness created by the troubling identification scenario created by the police in this case. Accordingly, Appellant's claim that trial counsel should have filed a motion seeking to have the victim's identification suppressed lacks arguable merit. Therefore, Appellant's ineffectiveness claim arising from the identification must fail.

■ In his final issue, Appellant argues that trial counsel was ineffective for failing to object to three pieces of hearsay evidence offered by Officer Haring at trial. First, Officer Haring testified that Officer Quinn [4] told him that the victim described the assailant as a "light-skinned black male, possibly wearing glasses and a hoody." N.T. at 28. Officer Quinn also took a cellphone photograph of the Uni–Mart surveillance footage, which was later given to Officer Haring. Officer Haring testified about that photograph at trial. *Id.* However, Officer Quinn did not testify at trial. Finally, Officer Haring testified that the Uni–Mart store clerk told him that the time was 12:53 a.m. when Appellant entered the store, while the Uni–Mart

surveillance video footage indicated that it was 1:53 a.m. The store clerk told Officer Haring that the time on the video was wrong. *Id.* at 35. Trial counsel did not object to any of this evidence at trial. Appellant argues that counsel was ineffective for not doing so.

Appellant contends that each of these statements was offered for the truth of the matter asserted and was relied upon by the trial court. Appellant argues that the trial court adjudicated Appellant delinquent based upon the timeline of events and the identification. Thus, Appellant asserts, the claim has arguable merit. Appellant further contends that trial counsel's failure to object to what Appellant believes was clearly inadmissible hearsay had no reasonable basis, and was not designed to best effectuate Appellant's interests. Finally, because the trial court relied upon the timeline and identification of Appellant, prejudice had to result. We take each piece of contested evidence in turn.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. Pa.R.E. 801(c); *Commonwealth v. Kuder,* 62 A.3d 1038, 1055 (Pa.Super.2013). As a general rule, hearsay is inadmissible, because such evidence lacks guarantees of trustworthiness fundamental to our system of jurisprudence. The rule against admitting hearsay evidence stems from its presumed unreliability, because the declarant cannot be challenged regarding the accuracy of the statement. *Kuder,* 62 A.3d at 1055 (citations omitted). Notably, "it is elemental that, '[a]n out of court statement which is not offered for its truth, but to explain the witness' course of conduct is not hearsay." *Commonwealth v. Carson,* 590 Pa. 501, 913 A.2d 220, 258 (2006) (quoting *Common-*

4.  Officer's Quinn's first name does not appear    in the record.

*wealth v. Sneed,* 514 Pa. 597, 526 A.2d 749, 754 (1987)).

Initially, the victim, due to his frazzled state immediately after being assaulted, was unable to provide Officer Haring with a description of his assailant. N.T. at 37. However, the victim later provided a description of the assailant to Officer Quinn. *Id.* Officer Quinn later related that description to Officer Haring. Because this information was elicited at trial through Officer Haring's testimony, Appellant contends that this evidence constituted inadmissible hearsay. We disagree. The evidence was not offered for the truth of the matter asserted. The evidence was not offered to prove that Appellant matched the victim's description. Rather, the evidence was offered to show the officers' subsequent course of conduct in searching for the alleged perpetrator, as demonstrated by Officer Haring's testimony:

> Officer Quinn did take care of that assignment, went down and observed a male inside the store at that time. Officer Quinn did return and question the victim inside the ambulance, and gave them a description as a skinny light-skinned black male, possibly wearing glasses and black hoody.
>
> \*        \*        \*
>
> The victim was treated at the scene, and we tried to continue the investigation, tried to keep it fluid. Officer Roach, who was also detail that night, gave the victim a ride back to his residence, as **Officer Quinn and I continued to check area bars for that described male.** The male described in the photograph or surveillance at the Uni–Mart closer resembled the description of the actor given by [the victim].

N.T. at 27–28 (emphasis added). Not being offered for the truth, Officer Quinn's statement was not hearsay. Appellant's claim lacks arguable merit.

In his brief, Appellant presents no legal argument with regard to his bald assertion that the cell phone photo taken from the Uni–Mart footage depicting the perpetrator was hearsay. Thus, this specific claim is waived. *Commonwealth v. Wright,* 599 Pa. 270, 961 A.2d 119, 157 (2008).

■ Last, Appellant contends that the statement made by the Uni–Mart store clerk to Officer Haring was hearsay. The camera footage provided by Uni–Mart's surveillance system indicated that the assailant entered the store at 1:53 a.m. However, the store clerk told Officer Haring that the footage was incorrect, and that the perpetrator actually entered the store at 12:53 a.m. Officer Haring related the statement from the clerk at trial. Trial counsel did not object. N.T. at 35.

The Commonwealth does not dispute that the statement was hearsay. *See* Brief for Commonwealth at 23–25. Instead, the Commonwealth contends that, even if the statement was hearsay, trial counsel's failure to object to it did not result in sufficient prejudice to establish ineffective assistance of counsel. We agree.

To establish prejudice, an appellant must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's action or inaction. *Commonwealth v. Dennis,* 597 Pa. 159, 950 A.2d 945, 954 (2008). The failure to meet any one prong of the ineffectiveness test, including the prejudice prong, defeats the entire claim. *Commonwealth v. Pierce,* 567 Pa. 186, 786 A.2d 203, 221–22 (2001).

While the contested testimony facially appears to be hearsay, we conclude that Appellant was not prejudiced by its admission. The hearsay testimony, taken for its truth, established that Appellant entered the Uni–Mart store shortly before 1:00

a.m., rather than an hour later. This information was cumulative of other properly admitted evidence that established the timeline of the relevant events. Specifically, Officer Haring testified that he first received a dispatch call regarding the assault at 1:03 a.m., thereby establishing the proper time frame of the events in question to be shortly before 1:00 a.m. During an interview with police, Appellant admitted that he went into the Uni–Mart store. This admission further established that the time on the surveillance footage was incorrect because the admission actually occurred prior to the incorrect time that was displayed on the Uni–Mart surveillance footage. Accordingly, the evidence at trial independently established the proper timeline of events. The Uni–Mart clerk's statement reiterated the same timeline. Thus, the content of the statement was cumulative, and cannot be said to have resulted in prejudice to Appellant. Thus, trial counsel was not ineffective for failing to object to Officer Haring's testimony.

Our review of Appellant's claims demonstrates clearly that he is not entitled to relief. Thus, we need not remand for the appointment of new counsel pursuant to *McBee, supra.*

Dispositional order affirmed. Jurisdiction relinquished.

Judge BOWES files a concurring opinion.

## CONCURRING OPINION BY BOWES, J.:

I join the majority in full as it relates to Juvenile's sufficiency of the evidence claim. In addition, I concur with the majority's conclusion that a claim of ineffective assistance of juvenile counsel need not be raised in an optional post-dispositional motion in order to be reviewed by this Court, especially where the juvenile has at all times been represented by the Public De-

fender's Office, as in this case. Further, although I disagree with part of the majority's discussion of Juvenile's first ineffectiveness claim, I concur in its finding that Juvenile is not entitled to relief.

Initially, I agree with the majority that, insofar as *In re D.S.* 614 Pa. 650, 39 A.3d 968 (2012) highlights that juveniles cannot pursue issues under the PCRA, it is improper to impose harsher waiver rules on juveniles than those that apply to adults. As the distinguished majority accurately recognizes, juveniles are not subject to the rule announced in *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002), which generally requires ineffectiveness issues to be deferred until collateral review. Since juveniles are ineligible for PCRA relief, they are permitted to raise claims of ineffective assistance of counsel during direct appeal. I add that neither the Commonwealth nor the juvenile court has advocated for a waiver rule based on counsel's failure to raise her own ineffectiveness in an optional post-dispositional motion and both the Commonwealth and juvenile court addressed the ineffectiveness claims on their merits.

The pertinent optional post-dispositional rule and comment herein read in relevant part:

**A. Optional Post–Dispositional Motion.**

(1) The parties shall have the right to make a post-dispositional motion. All requests for relief from the court shall be stated with specificity and particularity, and shall be consolidated in the post-dispositional motion.

(2) Issues raised before or during the adjudicatory hearing shall be deemed preserved for appeal whether or not the party elects to file a post-dispositional motion on those issues.

. . . .

*Comment:* The purpose of this rule is to promote the fair and prompt resolution of all issues relating to admissions, adjudication, and disposition by consolidating all possible motions to be submitted for court review, and by setting reasonable but firm time limits within which the motion is to be decided. Because the post-dispositional motion is optional, a party may choose to raise any or all properly preserved issues in the trial court, in the appellate court, or both. For the definition of "disposition," see Rule 120 and its *Comment.*

## OPTIONAL POST–DISPOSITIONAL MOTION

*See In re Brandon Smith,* 393 Pa.Super. 39, 573 A.2d 1077 (1990), for motions on ineffective assistance of counsel.

Under paragraph (A)(2), any issue raised before or during adjudication is deemed preserved for appeal whether a party chooses to raise the issue in a post-dispositional motion. It follows that the failure to brief or argue an issue in the post-dispositional motion would not waive that issue on appeal as long as the issue was properly preserved, in the first instance, before or during adjudication. Nothing in this rule, however, is intended to address Pa.R.A.P. 1925(b) or the preservation of appellate issues once an appeal is filed. *See Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998) (any issues not raised in a 1925(b) statement will be deemed waived).

Pa.R.J.C.P. 520 and comment thereto; *see also* Pa.R.J.C.P. 620 (effective February 23, 2012).

There is no decisional law construing the rule herein to require an attorney to raise her own ineffectiveness or an ineffectiveness claim in general in an optional post-dispositional motion to preserve the issue. The language of the rule refers specifically to issues that are raised before or during the adjudicatory hearing. The only issues the rule addresses relating to claims that would be raised after disposition are after-discovered evidence matters. Insofar as the comment refers to "properly preserved" issues, it also does so in the explicit context of issues arising "before or during adjudication." Comment to Pa. R.J.C.P. 520 (effective until February 23, 2012). The comment's "properly preserved" phraseology does not, as a matter of construction, pertain to ineffectiveness claims, which would be raised after the adjudication.[1]

There is nothing apparent from the express language of the rule or its comment that preserving an attorney's own ineffectiveness in an optional post-dispositional motion is mandatory. The face of both the rule and its comment, instead, provides that the post-dispositional motion is optional and the failure to file such a motion does not automatically result in waiver. Moreover, never has any court in Pennsylvania held that an attorney must raise her own ineffectiveness during the ongoing proceedings nor is there a case that requires a claim regarding a juvenile attorney's ineffectiveness be set forth in a post-dispositional motion or be subject to waiver.

In light of the lack of precedent and because a reasonable reading of the rule does not provide adequate notice to the bar that they must raise claims of ineffec-

---

1. The comment also references *In the Matter of Smith,* 393 Pa.Super. 39, 573 A.2d 1077 (1990) *(en banc ).* A majority of judges therein concluded that ineffective assistance of counsel claims need not be raised in a post-dispositional motion. *Smith* was decided prior to the adoption of the post-dispositional motion rule.

tiveness in an optional post-dispositional motion, it would be improper for this Court to find waiver. *Commonwealth v. Liston,* 602 Pa. 10, 977 A.2d 1089, 1093–1094 (2009) ("Before a mandatory rule of procedure affecting an untold number of cases is issued [by the Superior Court], it should be studied and approved by one of our procedural rules committees, and then considered by [the Supreme] Court"). Thus, even absent our Supreme Court's decision in *In re D.S., supra,* I would find that a claim of juvenile counsel ineffectiveness is not automatically waived if not presented in an optional post-dispositional motion.

Further, as the majority recognizes, we have allowed juvenile counsel to raise ineffectiveness claims for the first time on appeal. *In re A.J.,* 829 A.2d 312 (Pa.Super.2003). Any tension between allowing claims to be raised for the first time on appeal and this Court addressing the issue in the first instance can be ameliorated by the remand procedure that this Court has consistently followed. Where the juvenile court adequately addressed the issues in its Pa.R.A.P. 1925(b) opinion, and no additional fact-finding is necessary, this Court can address the claims. *See In re B.S.,* 831 A.2d 151, 155 (Pa.Super.2003) ("Where the issues have been briefed by both parties and the record is complete however, we may, in the interests of judicial economy, address the merits of appellant's allegations of error."); *see also Interest of A.P.,* 421 Pa.Super. 141, 617 A.2d 764, 768 (1992) (*en banc*).

Furthermore, it should be acknowledged that any finding of waiver of juvenile coun-

sel ineffectiveness claims based on the failure to file an optional post-dispositional motion would essentially be engrafting discarded adult criminal law into the juvenile context. *See Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977), *abrogated by Grant, supra.*[2] Such a rule would have the unfortunate effect of imposing more rigid requirements in juvenile cases than those applicable in adult proceedings, something the *In re D.S.* Court and the majority herein appropriately reject.

As it relates to the merits of Juvenile's ineffectiveness suppression claim, I depart from the majority to the extent that it holds that the claim lacks arguable merit. I would find that Juvenile's issue presents a claim of arguable merit, but that he cannot establish actual prejudice. The majority highlights that the victim who made the identification in this case was pepper sprayed in his eyes during the attack. Accordingly, the victim's ability to perceive his assailant was seriously impaired. The attack also occurred shortly before 1:00 a.m. in an area where the victim admitted there was no real light, and the victim only caught a glimpse of the perpetrator for a "short amount of time." N.T., 5/19/11, at 6. The victim described his attacker as a thin light-skinned black male wearing glasses who was approximately the same height as the victim.

Approximately, one-half hour later, police took the victim to the police station to identify his possible assailant. The victim was told by police that he would be making an identification and that police "had what they thought was the person and for me to

---

**2.** At the time of the promulgation of the *Hubbard* rule, adult defendants were required to preserve all issues in a post-trial motion. The *Hubbard* rule never applied to juvenile cases because, until 2007, post-dispositional motions were not provided for by rule in juvenile matters. Moreover, *Hubbard* did not require

an attorney to raise his own ineffectiveness. *See Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687, 695 n. 6 (1977) ("ineffectiveness of prior counsel must be raised at the earliest stage in the proceedings at which the counsel whose effectiveness is being challenged no longer represents the defendant.").

ID the person." *Id.* at 21. At the time the victim entered the police station, his vision was still impaired by the pepper spray. *Id.* at 24. The only persons who were not in police uniform in the room where police brought the victim were Juvenile and his mother, the latter of whom certainly could not have been mistaken for the perpetrator. There was no evidence presented that Juvenile wore glasses. These factors render Juvenile's claim that counsel should have sought to suppress the out-of-court identification and prevent an in-court identification to be one of arguable merit.

Nonetheless, additional circumstances warrant the conclusion that Juvenile cannot establish actual prejudice, *i.e.,* a reasonable probability that the outcome of a suppression hearing would have resulted in suppression of the identification and thus a reasonable probability that the outcome of the adjudicatory hearing would have been altered. *Commonwealth v. Arch,* 439 Pa.Super. 606, 654 A.2d 1141, 1143 & 1145 (1995) (illegal stop tainted a subsequent search and if evidence was suppressed due to stop there was a reasonable probability that the outcome of the trial would have been different); *see also Commonwealth v. Melson,* 383 Pa.Super. 139, 556 A.2d 836 (1989) (Trial counsel found ineffective after not filing a motion to suppress an identification where the witness provided the only untainted testimony connecting the defendant with the crime, the trial court declared it would have suppressed the identification, and there was a reasonable probability that the outcome of the trial would have been different).

The critical factor in this matter is that the victim identified Juvenile by his voice. Prior to the attack, the victim heard his assailant ask for a cigarette. The victim then heard the perpetrator demand, ap-

proximately five times, that he "Give up the money." N.T., 5/19/11, at 7. The pepper spray, poor lighting, and short duration of observing his attacker have no bearing on the victim's voice identification. The victim stated that he was "300 percent certain" that Juvenile's voice was the voice of his attacker. *Id.* at 15. For this reason, I find that Juvenile cannot establish actual prejudice on this issue.

As it pertains to Appellant's second ineffectiveness claim, I agree that Officer Haring's testimony about the description of the perpetrator, when placed in context, falls under course of conduct testimony. I add that because this was not a jury trial, and we presume that a judge does not consider evidence improperly, Juvenile cannot establish prejudice. *See Commonwealth v. Dent,* 837 A.2d 571 (Pa.Super.2003); *compare Gombar v. Penn., DOT,* 678 A.2d 843 (Pa.Cmwlth.1996) (admission of state-of-mind testimony became improper hearsay during non-jury trial where court considered it for truth of the matter asserted). Moreover, the victim testified at the adjudicatory hearing as to the description he provided to police. N.T., 5/19/11, at 9–10. Hence, Officer Haring's testimony was cumulative of properly admitted evidence. *Compare Commonwealth v. Carroll,* 355 Pa.Super. 569, 513 A.2d 1069, 1071 (1986) (counsel found ineffective where a statement from a confidential informant contained in a search warrant was introduced where the informant was not available for cross-examination and the jury could have learned that police arrested the defendant in response to that warrant without including the hearsay statements).

With the aforementioned caveats and additions in mind, I join the majority.