J-A25024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.D. | No. 493 EDA 2013 |

Appeal from the Dispositional Order of January 18, 2013
In the Court of Common Pleas of Monroe County
Juvenile Division at No.: CP-45-JV-0000312-2012

BEFORE: DONOHUE, J., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED NOVEMBER 07, 2014**

D.D., a minor, appeals the juvenile court's January 18, 2013 dispositional order, which the court entered after D.D. was adjudicated delinquent of rape of a child, aggravated indecent assault, and two counts of indecent assault.[1] For the reasons that follow, we remand this case to the juvenile court.

The juvenile court summarized the facts that were presented at D.D.'s delinquency adjudication hearing as follows:

> [D.D.] and the victim, D.A., are cousins by blood, though they share only a grandfather. On December 10, 2012, [D.D.], then fifteen, and D.A., then eleven, took separate school buses to the same bus stop near their grandfather's house at the end of [the] school day. Shortly after they each arrived home, E.D. ("Grandmother"), [D.D.'s] step-grandmother and D.A.'s

---

[*]     Retired Senior Judge assigned to the Superior Court.

[1]     18 Pa.C.S. §§ 3121(c), 3125(a)(1), and 3126(a)(1) and (7), respectively.

grandmother, left for work, leaving [D.D.] and D.A. home alone. D.A. credibly testified that, after her grandmother left, she was alone in her bedroom when [D.D.] entered. At that point, [D.D.] pushed D.A. on the bed, pulled her pants and underwear down, pulled down his own pants and underwear, and "put his private parts in [D.A.'s] private parts." D.A. testified as follows:

Q.  When you say he put his private parts in your private parts, is that his front private or back private?

A.  Front.

Q.  Is that where a boy pees from?

A.  Yeah.

Q.  And you said he put his front private in your private?

A.  Yeah.

Q.  Was that your front private or your back private part?

A.  My front private part.

At no time did D.A. consent to any of these acts.

[D.D.'s] actions cause D.A. to experience tremendous pain and to bleed, staining the bed sheet. The next day, D.A. wrote a note to her grandmother explaining what [D.D.] did to her. D.A. also told her guidance counselor at school, and she underwent a medical examination at the Children's Advocacy Center ("CAC") in Scranton.

Sandra Febero, a nurse practitioner at the CAC, conducted the examination of D.A. on December 12, 2012, three days after the incident. During the course of the examination, Ms. Febero discovered [that] D.A. had a compete transection of her hymen that was "quite fresh and very uncomfortable for [D.A.]." Ms. Febero further credibly testified that D.A. had indicated to her that the injury occurred when a "male approximately 15 years of age had put his penis into her vaginal area causing her pain and causing her to have bleeding." Ms. Febero observed remnants of "old blood," which she attributed to the transection. She also observed a separate bloody discharge, which she initially

believed to be related to D.A.'s menstrual cycle; however, Ms. Febero later learned from D.A. that D.A.'s last menstrual cycle ended ten days before the examination and seven days before the incident. [Grandmother] confirmed that D.A.'s last menstrual cycle had ended before December 10.

Grandmother's testimony further corroborated D.A.'s version of events. Grandmother, who had been sequestered during D.A.'s testimony, credibly testified that D.A had told her that [D.D.] had pushed D.A. on the bed and pulled down D.A.'s pants. Grandmother also confirmed that D.A. [] had written her a note describing the events that occurred on December 10.

D.A.'s guidance counselor, Jennifer Borzio, confirmed D.A.'s account. Ms. Borzio who was also sequestered during D.A.'s testimony, indicated [that] D.A. had told her that, after [Grandmother] left for work on December 10, [D.D.] entered D.A.'s room, forced her onto the bed, took off her pants and underwear, took of his pants and underwear, "got on top of her and that his privates went into her privates." Ms. Borzio testified further [that] D.A. told her that D.A. had told [D.D.] "no" and that she had bled and was hurt as a result of [D.D.'s] actions.

[D.D.] offered an alternative version of events, testifying that shortly after he went back to the bus stop to retrieve his 10-year-old sister, [B.], and returned to his grandfather's house, he heard D.A. crying in her room. [D.D.] further testified that he initially told D.A. to be quiet, but he eventually went to D.A.'s room to see what was wrong. After being required to apply significant force to get the door open, [D.D.] continued, he discovered D.A. sitting on her bed crying. [D.D.] testified that he asked D.A. what was wrong, and she replied that she had menstruated. As a result, [D.D.] testified, there was a large bloodstain on the bed sheet that required the sheets to be removed from the bed and placed in the washing machine.

Juvenile Court Opinion ("J.C.O."), 4/8/2013, at 5-8 (citations to notes of testimony omitted).

At the conclusion of the hearing, the juvenile court adjudicated D.D. delinquent of the acts set forth above. On January 18, 2013, the juvenile court held a dispositional hearing, at the conclusion of which the court

ordered D.D. to be placed at the Northwestern Academy Secure, to be transferred when it was deemed to be appropriate to the SET program, which is Northwestern Academy's sexual offender treatment program. Additionally, D.D. was classified as a "juvenile offender" for purposes of the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. § 9799.12 (definitions), and was ordered to comply with SORNA's reporting and registration requirements for the remainder of his life pursuant to 42 Pa.C.S. § 9799.15(a)(4). D.D. did not file post-dispositional motions.

On February 4, 2013, D.D. filed a notice of appeal. In response, the juvenile court directed D.D. to file a concise statement of errors complained of on appeal. On March 18, 2013, D.D. filed a concise statement. In the statement, D.D. alleged, *inter alia*, that SORNA as it applied to juveniles was unconstitutional, an issue that D.D. had not raised previously before the juvenile court either during the dispositional hearing or in a post-dispositional motion. On April 8, 2013, the juvenile court issued an opinion pursuant to Pa.R.A.P. 1925(a). Regarding D.D.'s constitutional challenge to SORNA, the juvenile court deemed the issue to be waived, because D.D. was raising the issue for the first time in his concise statement. J.C.O., 4/8/2013, at 3-4.

When the case proceeded to this Court, D.D. failed to file a timely brief, and the case was dismissed. D.D. then obtained new counsel, who petitioned this Court to reinstate D.D.'s appeal. On November 19, 2013, this Court granted D.D.'s petition, and reinstated the appeal.

Shortly thereafter, the Court of Common Pleas of Monroe County issued an opinion in five other juvenile cases declaring the application of SORNA to juveniles to be unconstitutional. *See In Re BB, et al.*, No. 248 JUV 2012 *et. al.* (C.P. Monroe Cty, Jan. 16, 2014) (Worthington, P.J.). Similarly, the juvenile court judge that presided over D.D.'s case, relying upon Judge Worthington's opinion, declared SORNA to be unconstitutional in another separate case. *See In Re R.M.J.*, No. 190 JUV 2013 (C.P. Monroe Cty., Jan. 28, 2014). Finally, the York County Court of Common Pleas declared the same on November 4, 2013. *See In Re J.B. et al.*, No. 726 JUV 2010 *et al.* (C.P. York Cty., Nov. 4, 2013). In light of these events, the juvenile court in this case issued a supplemental Rule 1925(a) opinion on January 28, 2014. However, the court reasserted its view that D.D. was not entitled to relief, because he failed to preserve the issue properly. J.C.O., 1/28/2014, at 5-6.

Presently, D.D. raises the following three issues:

1. Did the court abuse its discretion in not allowing the testimony about the complaining witness' prior false accusations of the same conduct against others?

2. Did [D.D.'s] adjudication counsel timely raise the issue of the constitutionality of SORNA under the circumstances?

3. Should this matter be remanded to allow the lower court to apply its ruling that SORNA is not constitutional as it applies to juveniles, to this juvenile as well, where the only reason same has not already occurred was the existence of the pendency of this appeal?

Brief for D.D. at 7 (some punctuation and capitalization modified).

However, we first must address D.D.'s request to remand this case to permit the juvenile court to address his constitutional challenge to SORNA, and presumably to align D.D. with those similarly situated juveniles who received relief on the issue in Monroe and York Counties. Shortly after this Court reinstated D.D.'s appeal, D.D. filed an application with this Court for remand. We denied the motion without prejudice to renew the request before this panel. D.D. has done so. *See* Brief for D.D. at 6.

As noted, D.D. did not file a post-dispositional motion challenging the constitutionality of SORNA as it applies to juveniles. Rather, D.D. raised the issue for the first time in his Rule 1925(b) concise statement, which typically would result in waiver of an issue. *See* Pa.R.A.P. 302(a). The juvenile court considered the challenge to be waived because D.D. "did not raise the issue by optional post disposition motion pursuant to Pa.R.J.C.P. 620 or seek to file it by raising a motion for *nunc pro tunc* relief pursuant to Pa.R.J.C.P. 622." J.C.O., 4/8/2013, at 3. However, as we explained in *In Re K.A.T.*, 69 A.3d 691 (Pa. Super. 2013), a juvenile cannot be sanctioned for failure to file post-dispositional motions because they are optional. *Id.* at 698 (citing *In re D.S.*, 39 A.3d 968, 973 (Pa. 2012)). In *K.A.T.*, we held that a juvenile does not waive a claim of ineffective assistance of counsel by raising it for the first time in a Rule 1925(b) statement. *K.A.T.*, 69 A.3d at 698-99. Although the issues in *K.A.T.* and the instant case differ slightly, we believe that, because they arise in a similar procedural context, they are sufficiently

- 6 -

similar to compel the same conclusion. The relevant analysis in **K.A.T.** bears repeating here in full:

> [W]e also must consider our principles of preservation and waiver. Instantly, Appellant did not preserve his ineffective assistance of counsel claims in the trial court, nor did he preserve them by filing a Pa.R.J.C.P. 620 post-dispositional motion. Rather, Appellant raised these claims for the first time during this appeal. Facially, this practice would run afoul of our well-settled, mandatory preservation principles. **See** Pa.R.A.P. 302(a) (issues not raised by an appellant in the lower court are waived and cannot be raised for the first time on appeal). Typically, our preservation requirements apply to juvenile proceedings. **See In re R.N.**, 951 A.2d 363, 371 (Pa. Super. 2008) (citing **In Interest of DelSignore**, 375 A.2d 803, 805-06 (Pa. Super. 1977) ("In juvenile proceedings, appellants must preserve issues on appeal by raising them in the trial court; otherwise, they are waived.")).
>
> However, it long has been the case that juveniles are permitted to raise ineffectiveness claims for the first time in a Pa.R.A.P. 1925(b) statement, without otherwise preserving those issues first before the trial court. **In re A.J.**, 829 A.2d 312, 315 n. 3 (Pa. Super. 2003). Our Supreme Court's recent decision in **In re D.S.**, 39 A.3d 968 (Pa. 2012), confirms our belief that this entrenched principle remains in effect, despite our general waiver rules. In **D.S.**, the Supreme Court was confronted with a challenge to the sufficiency of the evidence claim in a juvenile case. The Commonwealth contended that the issue was waived pursuant to Pa.R.A.P. 302(a), as the juvenile had not presented the claim to the trial court in the first instance. **D.S.**, 39 A.3d at 972. We discussed the **D.S.** Court's rejection of the Commonwealth's waiver argument very recently in **In re J.B.**, 69 A.3d 268 (Pa. Super. 2013):
>
>> Our Supreme Court disagreed [with the Commonwealth's argument] for three reasons. First, because Pa.R.J.C.P. 620 makes the filing of post-adjudication motions optional, "the failure to raise issues in such a motion may not be sanctioned." **D.S.**, 39 A.3d at 973. Second, unlike adult defendants in criminal proceedings, juvenile defendants cannot seek recourse under the Post–Conviction Relief Act, 42 Pa.C.S. §§ 9541–46 ("PCRA"), because the PCRA does

- 7 -

not apply to juvenile proceedings. *See* 42 Pa.C.S. § 9543(a)(1) (petitioner must be convicted of a crime). For this reason, a finding of waiver for failure to preserve a sufficiency claim in the juvenile court would be a harsher result than for a similarly situated adult criminal defendant. ***D.S.***, 39 A.3d at 973. Third, the juvenile court may provide its analysis of the sufficiency challenge in its Pa.R.A.P. 1925(a) opinion, and thus there is no impediment to an appellate court's review of a sufficiency claim in the first instance. ***Id.***

> ***J.B.***, 69 A.3d at 275–76 (citations modified).

The same reasoning that compelled the Supreme Court's decision in ***D.S.*** must be applied to ineffective assistance of counsel issues. Because the PCRA is not available to juveniles, and because no juvenile counterpart exists, ineffective assistance of counsel claims bear no material distinction from the sufficiency claim discussed by our Supreme Court in ***D.S.*** The only available mechanism to raise ineffective assistance of counsel claims is Pa.R.J.C.P. 620. However, the Supreme Court made clear that an appellant cannot be sanctioned for failing to raise these claims in a Pa.R.J.C.P. 620 motion, because such a motion is, by the express terms of the rule, optional. ***D.S.***, 39 A.3d at 973. If we were to apply our waiver principles to ineffective assistance of counsel claims, the juvenile would not have the benefit of the PCRA, or any other meaningful collateral mechanism, either to raise those claims for the first time or to seek a remedy for failing to properly preserve them in the first instance.

***K.A.T.***, 69 A.3d at 698-99 (citations modified).

We do not seek to apply ***K.A.T.*** to all cases in which an issue is raised for the first time in a Rule 1925(b) statement. However, under the unique circumstances of this case, we believe that D.D.'s constitutional challenge is sufficiently similar to an ineffective assistance of counsel claim so as to fall within the parameters of ***K.A.T.*** Like ineffective assistance of counsel claims, the constitutional challenge presented herein could have first been

raised in a post-dispositional motion. However, because the rule is optional, D.D. cannot be sanctioned for failing to raise the issue in such a motion. Moreover, the issue is unlike most trial issues, and more akin to an ineffective assistance of counsel issue, because it could not in this case be raised before or during the adjudication hearing. Indeed, SORNA did not take effect until December 20, 2012, *see Commonwealth v. Sampolski*, 89 A.3d 1287, 1288 (Pa. Super. 2014), after D.D.'s adjudication of delinquency. Like ineffective assistance of counsel claims, D.D. could have raised the issue at the dispositional hearing or in an optional post-dispositional motion. However, the failure to do so clearly does not merit a finding of waiver under the circumstances of this case and pursuant to *K.A.T.*

Additionally, as is the case with ineffective assistance of counsel claims, if the issue were to be deemed waived, D.D. would have no recourse because the PCRA is inapplicable to juveniles. Thus, in this instance, and again like the situation in *K.A.T.*, if D.D. was precluded from pursuing the issue in this appeal, he would suffer more severely than an adult would in the adult criminal justice system, a consequence that clearly was disapproved of by our Supreme Court in *D.S.* This consequence becomes even more damaging to D.D. when we consider the fact that no less than six other similarly situated juveniles have received some form of relief in the Court of Common Pleas of Monroe County, although neither this Court nor the Pennsylvania Supreme Court have ruled definitively upon the issue.

For these reasons, under the unique circumstances of this case, we grant D.D.'s motion to remand this case to raise for consideration his challenge to the constitutionality of SORNA, and for the juvenile court to consider the issue on the merits.

Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/2014