J-A03032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| W.H., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| M.K., | |
| Appellant | No. 1907 EDA 2017 |

Appeal from the Order Entered May 17, 2017
in the Court of Common Pleas of Bucks County
Family Division at No.: 2013-62212-C-39

BEFORE:  GANTMAN, P.J., McLAUGHLIN, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                        **FILED APRIL 24, 2018**

M.K. (Mother) appeals from the order of the Court of Common Pleas of Bucks County (trial court), entered May 17, 2017, that awarded W.H. (Father) primary physical and legal custody, and awarded only partial physical custody to Mother.  We affirm.

The parties were married in September of 2007.  Their only child, E.H., (Child), was born in August of 2010, and was six years old at the time of the trial court proceedings that led to this appeal.  The parties separated in February of 2014 when Father secured an order for protection from abuse (PFA order) against Mother, effective in March of that same year, which

_____

[*] Retired Senior Judge assigned to the Superior Court.

evicted Mother from the parties' home and protected Child from Mother for six months, with limited supervised visitation. This Court denied Mother's appeal of the PFA order on September 11, 2014. (*See W.W.H. v. M.K.*, 107 A.3d 223 (Pa. Super. 2014) (unpublished memorandum)). The parties were divorced in November of 2016.

In February of 2016, Father filed a Petition to Modify Custody and, on May 4, 2016, the trial court ordered the parties to participate in a Court Conciliation and Evaluation Services (CCES) evaluation. Eric Frajerman, Psy.D., issued a CCES report on August 18, 2016. Dr. Frajerman recommended shared physical custody but recommended Father have sole legal custody over Child's medical decisions due to concerns about Mother's medical judgment and failure to communicate with Father.

The parties negotiated and entered into an agreed custody order on December 2, 2016, which required that Child would treat only with pediatrician Elana Altschuler, M.D. The order required the parties to notify each other of any sick appointments at the time when the appointment is made, and required the parties to immediately notify each other of any emergency appointments. It also precluded either party from giving Child medicine not prescribed by Dr. Altschuler.

Father filed an Emergency Petition to Modify Custody on January 3, 2017, after Mother took Child to his pediatrician on December 28, 2016, without prior notice to Father, and alleged that Father had sexually abused

Child. As a result of these allegations, Child was taken by ambulance to a hospital in Princeton, New Jersey, where he was given a rectal examination. Child was released from the hospital into Father's custody after no evidence of any abuse was discovered. Bucks County Children and Youth Services (BCCYS) investigated the allegations and determined that they were unfounded. In addition to this incident, Mother has accused Father of sexually abusing Child on three separate occasions over the past six years. All of these allegations were determined to be unfounded.

The trial court held hearings on Father's emergency petition on March 6, 2017, March 22, 2017, March 29, 2017, April 21, 2017, and April 27, 2017. Testifying at those hearings, in addition to Mother and Father, were BCCYS social worker, J.L.; a friend of Mother who testified from Germany, M.S.; a friend of Mother from Bucks County, A.S.; Mother's neighbor, K.D.; and Mother's treating therapist, Donald A. Burstein, Ph.D. The court found Mother's testimony and that of M.S., A.S., and K.D. to be not credible.

The trial court entered the order complained of here on May 17, 2017, granting Father primary physical custody and sole legal custody of Child, and Mother partial physical custody. Mother timely filed her notice of appeal on June 13, 2017, and, in response to the trial court's order of June 13, 2017,

she filed her concise statement of errors complained of on appeal on July 12, 2017.[1]

Mother presents the following questions for our review:

1. Whether the [t]rial [c]ourt committed reversible harmful error, abused its discretion, and committed an error of law when it denied and significantly interfered with [Mother's] substantive and procedural Due Process rights[?]

2. Whether the [t]rial [c]ourt committed reversible harmful error and/or an abuse of discretion by improperly allowing into evidence impermissible and harmful speculation and hearsay[?]

(Mother's Brief, at 6).

Mother presents us with a challenge to the custody order raising questions of law and abuses of discretion. As with all questions of law, our appellate standard of review is *de novo* and our scope of review is plenary. ***In re Wilson***, 879 A.2d 199, 214 (Pa. Super. 2005) (citation omitted).

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial

---

[1] There was no objection or claim of prejudice from Father about this late filing, and we have accepted it in reliance on our decision in ***In re K.T.E.L.***, 983 A.2d 745, 74-48 (Pa. Super. 2009). ***Cf. J.P. v. S.P.***, 991 A.2d 904, 908 (Pa. Super. 2010) (finding that the appellant waived issues for appeal by failing to comply with the trial court's order directing her to file a concise statement within twenty-one days).

- 4 -

judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated:

[T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

In *M.A.T. v. G.S.T.*, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we stated

the following regarding an abuse of discretion standard.

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T.*, *supra* at 18-19 (citations omitted).

Mother first claims that the trial court erred and abused its discretion where it denied her substantive and procedural due process rights. (*See* Mother's Brief, at 15-41). Mother has waived this issue.

It is well-settled that:

- 5 -

> Failure to timely object to a basic and fundamental error . . . will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. The principle [*sic*] rationale underlying the waiver rule is that when an error is pointed out to the trial court, the court then has an opportunity to correct the error. . . .

*Fillmore v. Hill*, 665 A.2d 514, 516 (Pa. Super. 1995), *appeal denied*, 674 A.2d 1073 (Pa. 1996) (citations omitted).

Here, our review of the record reveals that Mother failed to raise this issue in the trial court. Therefore, she has waived this claim. *See id.*; *see also Smith v. Smith*, 637 A.2d 622, 626 (Pa. Super. 1993), *appeal denied*, 652 A.2d 1325 (Pa. 1994) ("Appellant's failure to object to the court's noncompliance with the procedural [requirements] constituted a waiver of his [issue on appeal].").

Additionally, we observe that Mother has failed to develop a coherent argument. "The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007), *appeal denied*, 982 A.2d 509 (Pa. 2007) (citation omitted). "[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." *Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted).

Instantly, the argument section of Mother's brief, although raising several claims of due process violations, only cites cases that support the general principles of law that guide this Court in analyzing due process claims, one Commonwealth Court case, and only one pertinent case, which is relevant only to her claim of bias. (*See* Mother's Brief, at 15, 19, 33-34). She then reviews certain of the evidence presented and cites to the transcripts of the various hearings to argue that the trial court deprived her of her substantive and procedural due process rights. (*See id.* at 15-41). Mother does not, however, apply the law she cites to the facts of the case to develop a legal argument that supports her issue (other than to her bias claim). Therefore, her first issue is waived on this basis, as well. *See Beshore*, *supra* at 1140; *Lackner*, *supra* at 29-30.

Moreover, Mother's issue would not merit relief.

When confronted with a constitutional challenge premised upon substantive due process grounds, the threshold inquiry is whether the challenged statute purports to restrict or regulate a constitutionally protected right. . . .

*Khan v. State Bd. of Auctioneer Examiners*, 842 A.2d 936, 945 (Pa. 2004).

In this case, Mother claims that her "substantive due process rights were violated when the [t]rial [c]ourt drastically reduced her physical custody of [Child] to a shocking twenty-two hours per month including no overnights, amounting to less than one day per month with [Child]." (Mother's Brief, at 16). In other words, the gravamen of Mother's complaint is that the trial court erred or abused its discretion in the way it applied our laws and rules of

procedure. Nothing in Mother's argument is a challenge to the laws and rules themselves. Hence, Mother's substantive due process claim would lack merit.

> In terms of procedural due process, government is prohibited from depriving individuals of life, liberty, or property, unless it provides the process that is due. While not capable of an exact definition, the basic elements of procedural due process are adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case. Thus, courts examine procedural due process questions in two steps: the first asks whether there is a life, liberty, or property interest that the state has interfered with; and the second examines whether the procedures attendant to that deprivation were constitutionally sufficient.

*Commonwealth v. Turner*, 80 A.3d 754, 764 (Pa. 2013), *cert. denied*, 134 S. Ct. 1771 (2014) (citation omitted).

Here, Mother claims that her procedural due process rights were violated because the trial court was biased, rushed her attorneys, impermissibly limited her testimony to two hours and forty-five minutes, restricted her new attorney's access to the record and the transcripts of the prior days of testimony, and refused to hear testimony from Child's treating physicians. (*See* Mother's Brief, at 19-41). However, the hearing transcripts bely these allegations.

The trial court devoted almost five full days to this matter that generated over seven hundred and sixty pages of transcript. Of the witnesses who testified, Father called one and Mother called four, one of whom the trial court permitted to testify by video from Germany. Two attorneys represented Mother over the course of the hearings. Mother engaged the second attorney,

at the last minute, for the last day of the trial. Therefore, Mother had a more than adequate opportunity for the court to hear her case.

For example, Mother cites to an instance in the transcript of March 29, 2017, where the trial court urged Mother's counsel to move the matter along:

> THE COURT: I'm very unhappy at how long this is taking. It's not fair.
>
> [MOTHER'S COUNSEL]: And I'm very unhappy that it's taking this long, too, Your Honor.
>
> THE COURT: [Mother's Counsel] this cross-examination has not been well prepared in terms—you have a lot of documentation, this should not have taken this long. We need to get this case moved, please.
>
> [MOTHER'S COUNSEL]: Well, Your Honor, I agree that it's taken an inordinately long amount of time. I do also agree that, you know, again, as I have said many times, this is like a capital murder case to me.
>
> THE COURT: I don't want a speech. Move on to your next question.
>
> [MOTHER'S COUNSEL]: Well, I do want—
>
> THE COURT: [Mother's Counsel] I don't want a speech. Move on to the next question. Thank you.

(Mother's Brief, at 20-21) (citing N.T. Hearing, 3/29/17, at 157-58.)

We have examined this exchange in context and we find that the trial court was acting within the discretion granted to it by Pennsylvania Rule of Evidence 611 to avoid the wasting of time. *See Pa.R.E.* 611.

Mother next complains that the trial court denied her procedural due process by limiting her testimony to 2 hours and 45 minutes. However, she

- 9 -

does not tell us what evidence she was prevented from presenting or otherwise how the limitation denied her an opportunity to be heard. Again, we have examined the relevant exchange in context and we find that the trial court was acting within the discretion granted to it by Pa.R.E. 611 to avoid the wasting of time.

Also, our examination of the record reveals that the restrictions the trial court placed on the parties' ability to examine the record were reasonable. Neither party complained about these restrictions until Mother engaged new counsel for the final day of trial. On April 6, 2017, the trial court entered an order sealing the record and permitting access by viewing the record in her chambers.

The trial court explains:

[A]ccess to the file, the transcripts and the record were available at all relevant times. It was made expressly clear to both Counsel that either party or attorney may view the transcripts and file at any time, by scheduling such a time with Chambers with reasonable notice to allow the [c]ourt to make arrangements. Prior Counsel [Counsel representing Mother on all but the last day of the hearings] was aware of these incidents and fully cooperated with the April 6, 2017, Order with no argument or opposition.

This [c]ourt was more than accommodating to both Prior Counsel and Mother with respect to the amount of time provided for each to review prior transcripts. Trial [c]ourt's Chambers scheduled adequate time, reserved a private room in the Courthouse for a quiet and undisruptive environment, and provided both [t]rial [c]ourt's Law Clerk and a member of the Court tipstaff to supervise. (There was concern that Mother would attempt to take photographs on her cell phone of the transcripts.) While a certain date and time was scheduled for Prior Counsel and Mother to come in and review the transcripts, Judge's Chambers

made it clear to both Prior Counsel and Mother that they could take as much time as they needed. On April 13, 2017, Prior Counsel and Mother reviewed prior transcripts and took notes for approximately six hours while the [c]ourt's Law Clerk and one member of the tipstaff supervised. At the end of the day, Prior Counsel informed the Law Clerk that he was finished reviewing everything, and thanked him for providing extra time to finish. However, Mother indicated that she was not finished and needed more time to review. Therefore, more time was given to Mother to come back on April 20, 2017. Once again, the Law Clerk and a member of the tip staff sat with Mother for approximately three hours while Mother finished reading all prior transcripts. Mother then indicated she was finished, and thanked the Law Clerk for allowing her the time to review the record.

Though possibly encountering a slight inconvenience from the April 6, 2017, Order sealing the record and indicating the process by which to review the transcripts, more than adequate time was designated to Prior Counsel and Mother to review all prior transcripts in advance of the April 21, 2017, hearing. The [c]ourt determined the Order sealing the record was unquestionably necessary. Lastly, it was not the [c]ourt's decision to dismiss Mother's counsel who represented Mother for the first three hearings, leaving only minimal time for [New] Counsel to review the record. Any inconvenience associated with Mother's decision to retain new counsel in the middle of her custody hearing cannot justifiably be attributed to the [c]ourt, and certainly does not amount to any abuse of discretion or violation of Mother's due process rights.

(Trial Court Opinion, 8/14/17, at 28-29).

We conclude that the trial court's explanation supported its decision. New counsel was necessarily unfamiliar with the record of the case and who would, even if the record were not sealed and subject to viewing restrictions, have had a difficult time familiarizing herself with the case. Counsel's difficulty in familiarizing herself with the record was the direct result of Mother's dismissal of counsel who was familiar with the record and the hiring of one

who was not. The trial court did not deny Mother her due process rights by restricting access to the record.

Next, Mother failed to raise her issue regarding the exclusion of the treating physicians' testimony in her statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").[2]

Mother next complains that her "procedural due process rights were [] violated because she did not have the opportunity to defend herself before a 'fair and impartial tribunal' due to the [t]rial [c]ourt's pervasive bias against [her]." (Mother's Brief, at 33). Once again, we find that Mother has waived this issue because she failed to raise it in her concise statement of errors complained of on appeal and she fails to identify where she raised the issue at trial of this matter. (*See id.* at 33-41; Statement of Errors Complained of

---

[2] We briefly note that "[e]videntiary rulings are committed to the sound discretion of the trial court, and will not be overruled absent an abuse of discretion or error of law." ***Branham v. Rohm and Haas Co.***, 19 A.3d 1094, 1109 (Pa. Super. 2011), *appeal denied*, 42 A.3d 289 (Pa. 2012) (citation omitted). Here, Mother has not sustained her burden by showing that the alleged errors were harmful and prejudicial to her, and therefore an abuse of the court's discretion. (**See** Mother's Brief, 41-46). In fact, as admitted by Mother, the trial court, "in an effort to streamline the case and make stipulations, if possible," asked counsel for **both** parties "to stipulate to the entry of the emergency room records regarding the alleged sexual abuse and [] pediatrician records without calling the physicians named in the reports." (Mother's Brief, at 28) (citing N.T. Hearing, 3/06/17, at 91-92). This was within the court's discretion. **See Branham**, **supra** at 1109. Therefore, her argument would not merit relief.

on Appeal, at unnumbered pages 1-4); *see also* Pa.R.A.P. 1925(b)(4)(vii); Pa.R.A.P. 2119(e) (appellant must identify place in record where objection raised).

Moreover, we have reviewed the record, and we can discern no bias against Mother on the part of the trial court. "Adverse rulings alone do not establish the requisite bias warranting recusal, especially where the rulings are legally proper." *Arnold v. Arnold*, 847 A.2d 674, 681 (Pa. Super. 2004) (citation omitted). In addition, "[i]n order to find that the trial court's evidentiary rulings constituted reversible error, such rulings must not only have been erroneous but must also have been harmful to the complaining party." *Branham*, *supra* at 1109 (citation omitted). Here, Mother has failed to establish trial court bias. Therefore, Mother's claim would lack merit even if not waived. For all of these reasons, Mother's first issue is waived and would lack merit.

In her second issue, Mother asserts that the trial court erred when it admitted speculation and hearsay testimony from Father's witnesses. (*See* Mother's Brief, at 41-46). Mother waived this issue.

It is well-settled that "[w]hen a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. . . . In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise

Statement at all." ***Commonwealth v. Dowling***, 778 A.2d 683, 686 (Pa. Super. 2001) (citation omitted).

Here, in her Rule 1925(b) statement, Mother fails to identify exactly where in the record the trial court allegedly admitted hearsay, complaining only that the "trial court committed reversible harmful error by allowing into evidence and considering on multiple occasions, over objection, rampant speculation and hearsay." (Statement of Matters Complained Of, 6/12/17). Therefore, Mother's issue is waived.

Moreover, it would not merit relief.

Pennsylvania Rule of Evidence 602 provides, in pertinent part, that:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. . . .

Pa.R.E. 602.[3]

Pennsylvania Rule of Evidence 801(c) defines hearsay as a statement that:

> (1) the declarant does not make while testifying at the current trial or hearing; and

> (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

---

[3] Mother's reliance on ***Collins v. Hand***, 246 A.2d 398, 404 (Pa. 1968) and ***Winschel v. Jain***, 925 A.2d 782, 797 (Pa. Super. 2007), in support of her speculation argument, (***see*** Mother's Brief, at 41), is not legally persuasive where both cases involved the type of data on which expert opinion testimony must be based.

Pa.R.E. 801(c).

> As a general rule, hearsay is inadmissible, because such evidence lacks guarantees of trustworthiness fundamental to our system of jurisprudence. The rule against admitting hearsay evidence stems from its presumed unreliability, because the declarant cannot be challenged regarding the accuracy of the statement. Notably, it is elemental that, [a]n out of court statement which is not offered for its truth, but to explain the witness' course of conduct is not hearsay.

*In re K.A.T., Jr.*, 69 A.3d 691, 702 (Pa. Super. 2013), *appeal denied*, 81 A.3d 78 (Pa. 2013) (citations and quotations marks omitted).

Instantly, the examples of the alleged improper admission of hearsay and speculation offered in Mother's brief do not demonstrate violations of either the hearsay rule or the prohibition on speculation. (*See* Mother's Brief, at 41-46). The testimony to which Mother points in her brief focuses on questions asked of Father at the hearing, and answers that would have related to the PFA order against Mother and her medical judgment and decision-making with regard to Child. (*See* Mother's Brief, at 42-46). The trial court was aware that Father had been granted a PFA order against Mother, and that Dr. Frajerman had reported his concerns regarding Mother's medical judgment and decision-making as to Child.

Even if any of the testimony to which Mother objects is considered speculative and/or hearsay, the trial court was fully aware of Father's PFA order against Mother, and is presumed to have disregarded any inadmissible evidence. *See Commonwealth v. Galindes*, 786 A.2d 1004, 1014 (Pa. Super. 2001), *appeal denied*, 803 A.2d 733 (Pa. 2002) (explaining that trial

court, when acting as fact finder, is presumed capable of disregarding inadmissible evidence). Moreover, when considering section 5328(a) custody factors, the weight the trial court assigned this evidence, as well as all the other section 5328(a) factors, cannot be disturbed by this Court. ***See E.D. v. M.P.***, 33 A.3d 73, 76 (Pa. Super. 2011). We, therefore, can discern no error or abuse of discretion on the part of the trial court and Mother's second issue would lack merit.

Accordingly, for the reasons stated, we affirm the order of the Court of Common Pleas of Bucks County in this matter entered May 17, 2017.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/24/18

- 16 -