J-A06025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T. W. , A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.W., A MINOR | : : : : : : | |
| | : | No. 453 MDA 2018 |

Appeal from the Dispositional Order May 17, 2017
In the Court of Common Pleas of Susquehanna County Criminal Division
at No(s):  CP-58-JV-0000008-2017

BEFORE:   OTT, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED APRIL 12, 2019**

Appellant T.W., a minor, appeals from the dispositional order entered following his adjudication of committing the acts constituting indecent assault without consent, indecent assault–person less than thirteen years of age, and indecent assault–person less than sixteen years of age.[1]  Appellant asserts that trial counsel was ineffective for failing to object to certain evidence as hearsay and as inappropriate expert testimony.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3126(a)(1), (a)(7), and (a)(8), respectively.  Appellant was found not to have committed acts constituting rape, 18 Pa.C.S. § 3121(c), statutory sexual assault–4 to 8 years older, 18 Pa.C.S. § 3122.1(a)(1), sexual assault, 18 Pa.C.S. § 3124.1, and aggravated indecent assault–complainant less than 16 years old, 18 Pa.C.S. § 3125(a)(8).

The juvenile court summarized the relevant background to this matter as follows:

> M.J., an eight year old female, testified that she was attending elementary school and was . . . a second grader. M.J. testified that her parents were separated and that her father was remarried . . . When she visited with her father and stepmother, [Appellant, her older stepbrother,] was also present. M.J. testified that she would spend time and play with [Appellant] when she was staying at her father's residence. M.J. testified that [Appellant] "did something bad" to her while she was staying at her father's residence. Through the use of anatomical drawing, M.J. testified that [Appellant] touched her between her legs (front and back) with his "private part." M.J. stated that [Appellant] would remove her pants and underwear - and occasionally he would remove all of her clothes. M.J. indicated that [Appellant] would remove his pants and underwear but would not take his shirt off. M.J. described the inappropriate touching as [Appellant] rubbing his private part against her and that it would hurt. While [Appellant] was engaging in these acts, he would ask M.J. if it "felt good" and she told him "no." M.J. also testified that [Appellant] also touched her chest area with his hands. In estimating how many times this occurred, M.J. testified that it happened more than 10 times in both her room and [Appellant's] room. M.J. told her mother and her sister (H.J.) what happened. [Appellant's counsel cross-examined M.J. regarding times she had lied, and M.J. admitted to lying to her teacher about her sister dying in a car accident the previous year.]
>
> Dr. Susan Fort Sordoni, the medical director of the Children's Advocacy Center of Lackawanna County, was accepted by the trial court as an expert in the field of family medicine. Dr. Sordoni examined M.J. and also observed a good portion of M.J.'s forensic interview. Dr. Sordoni testified that M.J. informed her that T.W. had "put his wee wee in her pee pee and also in her butt and that water came out." Dr. Sordoni also recalled that M.J. told her that M.J. indicated that T.W.'s acts caused her pain. Dr. Sordoni conducted a medical examination and found no physical evidence of sexual abuse. Dr. Sordoni testified to "psychological markers" related to M.J.'s increasingly disruptive behavior. [Dr. Sordoni suggested that the literature in this area indicated that a child would not lie about sexual abuse.] Although Dr. Sordoni was

accepted as an expert witness, she was never asked to provide any expert opinion during the course of her testimony.

Kelly Flaherty, a caseworker for Wyoming County Human Services, testified that she conducted a minimal fact interview [with] M.J. upon receiving the referral of potential sexual abuse. Flaherty stated that M.J. had told her that T.W. had "put his privates in her privates" or "that he put his wiener in [her] privates." Flaherty also recalled that M.J. told her that she would go and sleep in her sister's room to [be] safe from [Appellant]. Flaherty also observed the forensic interview at the Children's Advocacy Center and Flaherty indicated that M.J. had disclosed that [Appellant] had "sex" with her, that he had put his penis by her buttocks and that he had peed on her.

H.J., a thirteen year old female, testified that she was the half-sister to the victim, M.J. She indicated that she and M.J. would go for visits to her father's house in Meshoppen. At her father's residence, H.J. had a room that adjoined M.J.'s room and was separated by a short hallway. H.J. reported that she had experienced a problem with [Appellant] trying to get into bed with her as well, but this ended when H.J. told [Appellant] to get out of her room.

H.J. testified that a M.J.'s behavior began to change in 2016 and she became quieter. M.J. began spending more time with [Appellant,] which surprised H.J. because M.J. normally stayed with her. M.J. told H.J. that [Appellant] was having "sex" with her and that he was going into her room at night. H.J. reported that M.J. began sleeping in H.J.'s room because she was scared.

M.J.'s mother, [A.K.], testified that she also noticed that in the fall of 2015 M.J.'s behavior became more defiant and she had a "bad attitude." As a result of her behavior, M.J. began seeing a counselor in November 2015. In March 2016, [A.K.] indicated that M.J. disclosed to her that [Appellant] had "put his thing into her private area." [A.K.] called M.J.'s father and M.J. repeated the disclosure to her father. M.J. has not had any contact with [Appellant] since the disclosure and her behavior is improving. Prior to this disclosure, [A.K.] had never heard M.J. mention anything of a sexual nature.

Pennsylvania State Trooper Youngblood testified that he began his investigation into this matter in April 2016. Youngblood testified that he was present for the forensic interview of M.J. and that she disclosed that [Appellant] had sex with her, that she used "age

appropriate terminology," that the abuse occurred at her father's residence, and that [Appellant] had "peed on her." Youngblood interviewed [Appellant] and he denied any inappropriate sexual contact with M.J. Based upon [Appellant's] demeanor and body language, Youngblood opined that [Appellant] was not telling the truth.

N.W., the fifteen year old sister of [Appellant], testified that all of the children tended to congregate in [Appellant's] room. N.W. indicated that she had never seen [Appellant] go into M.J.'s room and that she had never observed [Appellant] touch anyone inappropriately. N.W. testified that M.J. would "constantly lie" about things that other people had done. N.W. testified further that [Appellant] had no interest in M.J. and that he would kick M.J. out of his room. N.W. also recalled that M.J. would play with dolls and have the dolls engage in sexual acts while M.J. made "sex noises."

[Me.J.], M.J.'s stepmother and the mother of [Appellant], testified that M.J. had lied on a previous occasion about being spanked, had lied about having homework, and that she had lied about her sister's death. She also stated that M.J. had made a prior false accusation where she contended one of the other children had touched her breast.

[Me.J.] indicated that all of the children would spend time in [Appellant's] room. There were occasions when M.J. was told to leave [Appellant's] room because she was irritating the other children. [Me.J.] never saw any inappropriate conduct by [Appellant]. She testified that [Appellant] was [a] well-behaved child and there were no issues with him.

[Me.J.] questioned M.J. about using her dolls in a sexual manner and M.J. had explained that she had seen her mother and her mother's paramour engaging in such activities and that she had seen similar sexual acts on television. [Me.J.] also testified that M.J. had gotten possession of H.J.'s book that described puberty on several occasions.

[R.J.], the father of M.J., testified that prior to M.J.'s disclosure, he had a joint custody agreement as it related to M.J. [R.J.] confirmed that M.J.[']s behavior deteriorated over the course of time. He indicated that M.J.'s teacher informed him that M.J.'s behavior in class was inappropriate and that M.J. was not telling the truth. [R.J.] testified that M.J. made up stories in order to get attention.

[Appellant] testified that all of the children tended to play in his room because it had more room. [Appellant] indicated that he would kick M.J. out of his room when she was misbehaving. [Appellant] testified that M.J. was not truthful. [Appellant] denied ever touching M.J. in any inappropriate sexual manner.

Juvenile Ct. Op., 4/10/18, at 1-5 (citations and footnotes omitted).

Appellant was charged with committing delinquent acts that constitute the crimes of rape, statutory sexual assault–4 to 8 years older, sexual assault, aggravated indecent assault–complainant less than 16 years old, and indecent assault charges. Appellant was adjudicated delinquent on the indecent assault charges on February 22, 2017, and a dispositional order was entered May 17, 2017.

On July 31, 2017, Appellant filed a motion for *nunc pro tunc* relief seeking the right to file timely post-dispositional motions or reinstatement of the right to appeal to this Court. Mot. for *Nunc Pro Tunc* Relief, 7/31/17, at 3 (unpaginated). The juvenile court granted the motion on November 6, 2017, permitting Appellant to file a post-dispositional motion within ten days.[2]

_____

[2] As the juvenile court noted,

[t]his case has a unique procedural history. The initial adjudication proceeding occurred in Wyoming County in front of President Judge Russell Shurtleff, and the matter was then transferred to Susquehanna County as it was T.W.'s county of residence. T.W. filed a *nunc pro tunc* post-dispositional motion in this court seeking to challenge the adjudication. The Commonwealth did not object to the consideration of [the] post-dispositional motion *nunc pro tunc* and did not object to this court considering the motion.

Appellant filed post-dispositional motions on November 16, 2017, asserting that his counsel at the adjudication hearing[3] (adjudication counsel) was ineffective for failing to object to inadmissible testimony presented by the Commonwealth. *See* Post-Dispositional Mot., 11/16/17, at ¶¶ 20-43. Appellant argued that Trooper Youngblood improperly testified regarding Appellant's credibility where the Trooper indicated that he thought Appellant was not being truthful during his interview. *Id.* at ¶ 31 (citing N.T., 2/22/17, at 63).

Appellant also asserted that Dr. Sordoni testified to "allegations not testified to by [M.J.] during the adjudicatory hearing. For example, she stated, 'the perpetrator had put his wee wee in her pee pee and also in her butt and that water came out.'" *Id.* at ¶ 23 (quoting N.T., 1/4/17, at 52). Additionally, Children and Youth Services caseworker Kelly Flaherty testified that M.J. had informed her that T.W. had "put his privates in her privates." *Id.* at ¶ 24 (quoting N.T., 1/4/17, at 74). M.J.'s mother and sister testified to hearing M.J. describe similar events. *Id.* at ¶¶ 25-26; *see* N.T., 2/22/17, at 14, 34. Appellant argued that "to present hearsay evidence of [M.J.]'s prior statements, reasonable notice and an opportunity to test the reliability of such

_____

Juvenile Ct. Op., 4/10/18, at 1 n.1. References to the juvenile court indicate the Susquehanna County Court of Common Pleas unless otherwise noted.

[3] The Public Defender Office of Wyoming County represented Appellant during adjudication, and a private attorney, Mark Darmofal, Esq., represented Appellant in the post-dispositional phase of the case. On appeal, Appellant is represented by another attorney, Helen Stolinas, Esq.

hearsay evidence must be provided. . . . [T]here were no proceedings under the Tender Years Hearsay Act, 42 Pa.C.S. [§] 5985.1, prior to the adjudicatory hearing." Post-Dispositional Mot., 11/16/17, at ¶ 27.

Appellant further claimed that Dr. Sordoni provided expert testimony when she improperly testified "regarding behavioral changes arising in children who have been sexually victimized." *Id.* at ¶ 35. Appellant alleges that adjudicatory counsel was ineffective for failing to object when Dr. Sordoni stated that literature in this area indicates that children "don't lie" in these situations. *Id.* at ¶ 38 (quoting N.T., 1/4/17, at 56). Additionally, Appellant took issue with Dr. Sardoni testifying that the results of a later psychological exam indicated several markers and behaviors that can occur after a sexual assault. *Id.* at ¶ 36, 39 (citing N.T., 1/4/17, at 56).

On February 9, 2018, following a hearing, the juvenile court denied Appellant's post-dispositional motion. Appellant filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) statement. The juvenile court complied with Rule 1925(a). In its opinion, the juvenile court stated that

> [e]ven assuming that there was inadmissible evidence that was presented without objection from defense counsel, in order for [Appellant] to be entitled to relief, he would have to demonstrate that the inadmissible evidence contributed to the adjudication itself. In this case, both the Commonwealth and the defense were attacking the credibility of M.J. All of her prior statements – consistent and inconsistent – were elicited by both parties and

- 7 -

presented to the factfinder.[4]  In the end, President Judge Shurtleff heard from both M.J. and [Appellant] and had to judge the credibility of both witnesses. . . . [T]o the extent that some inadmissible evidence may have inadvertently been entered into the record, there is [a] presumption that President Judge Shurtleff ignored such evidence.  Moreover, even if this presumption did not exist, the record demonstrates that any such inadmissible evidence would have been *de minimis* in nature and would not have prejudiced [Appellant].

\* \* \*

[Regarding Dr. Sordoni, she] admitted that there was no "proof" that the psychological markers definitely demonstrate that sexual abuse occurred. . . . Dr. Sordoni simply referenced literature concerning the credibility of children making sexual assault reports, but clarified that she was "probably" being presented to demonstrate that M.J. was making consistent statements regarding the abuse.  When considered in this context, there was nothing about this testimony that would meet the standard applicable to expert testimony.  Given the long-standing rule that a trial judge is presumed to ignore inadmissible evidence, it is clear that Dr. Sordoni's relating to "literature" and "psychological markers" would not have been considered by the trial judge as it was far too speculative to constitute appropriate expert testimony.

Juvenile Ct. Op., 4/10/18, at 8, 10-11 (footnote omitted) (citing

***Commonwealth v. Gonzalez***, 109 A.3d 711, 727 (Pa. Super. 2015)).

Appellant raises the following questions for our review, which we have

reordered for ease of disposition:

[1.] Whether testimony regarding the State Trooper's opinion of the minor's credibility at the time of his interview with police was inadmissible and unfairly prejudicial?

---

[4] In the juvenile court's order denying Appellant's post-dispositional motion, the trial court indicated that "defense counsel aggressively attacked the credibility of the child victim.  As such the prior consistent statements of the child victim were plainly admissible under Pennsylvania Rule of Evidence 613(c)."  Order, 2/9/18, at 1 n.1.

[2.] Whether testimony regarding the complainant's prior statements violated the Tender Years Hearing Act, and constituted inadmissible hearsay?

[3.] Whether the opinion testimony of the examining physician that the complainant was a victim of a sexual assault, absent physical evidence on exam, was inadmissible and unfairly prejudicial?

[4.] Whether failure to object [to] numerous instances of hearsay, irrelevant, and unfairly prejudicial evidence constituted ineffective assistance of counsel by undermining the truth determining process such that no reliable adjudication could take place?

[5.] Whether the prejudicial and inadmissible evidence entered without defense objection constitute[s] reversible error in light of the fact that a Common Pleas judge served as the fact finder?

Appellant's Brief at 4.[5]

---

[5] The questions on appeal differ from those raised in Appellant's Rule 1925(b) statement, which included the following issues:

1. The court erred in denying the minor's post dispositional motion alleging ineffectiveness of counsel on the basis that the trial judge would have disregarded inadmissible evidence. Due to the amount and nature of the inadmissible evidence, the cumulative effect resulted in prejudice to the defendant, particularly in light of the fact that the evidence of guilt was not conclusive.

2. With respect to the hearsay evidence presented by the Commonwealth through Dr. S[o]rdoni in violation of the Tender Years Act, said testimony prejudiced [Appellant's] right to a fair trial because it alerted the finder of fact that there were more serious allegations during the investigation which were suggestive of penetrative assault, and which were not testified to by the complainant during the adjudicatory hearing.

3. Additional hearsay evidence was presented to cast the minor and his family in a poor light in suggesting that he would have had the propensity to commit these offenses because of alleged possession of and exposure to pornographic material, mother's

prior incarceration, [Appellant's] placement in a foster home, and the allegation that he had been previously abused.

4. The court erred in finding that Dr. S[o]rdoni did not present expert testimony. Although Dr. S[o]rdoni did not testify to "a degree of professional certainty", she did testify as an expert— she was qualified as an expert in family medicine, and her testimony was based on her knowledge and experience, and certainly would qualify as opinion testimony. The court would have understood it as such, and there was no other purpose for the portions of her testimony regarding behavioral changes, psychological markers and behaviors consistent with sexual abuse and her assertions that "children don't lie".

5. In the absence of physical abuse, an expert witness may not express an opinion that the complainant was a victim of sexual assault based upon witness accounts couched as a history. ***Commonwealth v. Maconeghy***, No. 81 MAP 2016, 2017 Pa. LEXIS 2466 (Oct. 18, 2017)[.]

6. The Court erred in failing to decide whether Dr. S[o]rdoni's [testimony] would have been admissible during the adjudicatory hearing, presuming that if it was inadmissible, the factfinder would have disregarded this testimony.

7. ***Maconeghy*** was not decided until October 18, 2017, nearly eight months after the hearing in this matter. However, counsel should have objected to the Commonwealth's introduction of the testimony because allocator had been granted in ***Maconeghy*** on August 5, 2016—well in advance of the adjudicatory hearing, on the following question:

   "Whether the Superior Court erred in finding that Dr. Novinger's statement that he believed the child was victimized encroached on the jury's function as sole arbiter of credibility when the case law that the Superior Court relied on does not warrant such a result."

8. There is nothing of record to suggest that the fact finder disregarded the testimony of Dr. Sardoni, or was aware of its inadmissibility, particularly given the fact that allocator had

First, Appellant asserts that Trooper Youngblood improperly testified to his opinion that Appellant was not being honest during his interview. Appellant's Brief at 22. According to Appellant, adjudicatory counsel "was ineffective in failing to object to this testimony, and had no reasonable strategic basis for inaction." *Id.* at 23. However, we note that Appellant failed to include this claim regarding counsel's ineffectiveness or otherwise mention Trooper Youngblood in his Rule 1925(b) statement. *See* Rule 1925(b) Statement, 4/5/18. Nor did the juvenile court address the issue. Accordingly, this issue is waived.[6] *See In Interest of C.E.H.*, 167 A.3d 767, 772 (Pa. Super. 2017) (noting that where an issue has not been preserved in a Rule 1925(b) statement and it is raised for the first time on appeal, the issue is waived).

In his next three issues, Appellant asserts that his adjudicatory counsel was ineffective for failing to object to certain evidence at the adjudicatory hearing. Accordingly, we address these issues together.

_____

been granted on the legal issue and counsel did not alert the court to the legal issue.

9. The court's premise that even if inadmissible evidence was presented, the fact finder, a jurist, would have disregarded the evidence, should not apply here, where there was not overwhelming evidence of guilt.

Rule 1925(b) Statement, 4/5/18, at 1-3 (unpaginated).

[6] Even if this issue were not waived, for the reasons outlined below, Appellant would not be entitled to relief on this issue.

Initially, we note that Appellant's ineffective assistance of counsel (IAC) claims are properly before this Court, since this is a juvenile matter, and the Post Conviction Relief Act[7] does not apply. *In re K.A.T., Jr.*, 69 A.3d 691, 697 (Pa. Super. 2013) (noting that "[b]ecause of a juvenile's lack of access to collateral review, we have concluded that it is necessary to review a juvenile's ineffective assistance of counsel claims on direct appeal, when properly raised" (citation omitted)). Here, Appellant preserved his IAC claims in the trial court by filing his post-dispositional motion under Pa.R.J.C.P. 620. *See* Pa.R.J.C.P. 620(A).

Appellant first asserts that certain hearsay testimony regarding M.J.'s statements describing the incidents with Appellant violated the Tender Years Hearsay Act, which requires notice and an *in camera* hearing to determine the reliability of such statements. Appellant's Brief at 19. According to Appellant, no notice was provided and no hearing was held, and therefore the Commonwealth should not have been able to introduce the testimony of Dr. Sordoni, Kelly Flaherty, M.J.'s mother, or her sister, which indicated statements M.J. had made about being abused. *Id.* Adjudicatory counsel did not object to these statements. According to Appellant, his adjudicatory counsel "should have been objecting to efforts by the Commonwealth which improperly bolstered [M.J.'s] credibility." *Id.* at 28.

_____

[7] 42 Pa.C.S. §§ 9541-9546.

With regard to IAC claims, we presume that counsel is effective, and Appellant bears the burden of proving ineffectiveness. ***K.A.T.***, 69 A.3d at 699. We use the following three-pronged test to determine whether counsel was ineffective:

> [W]e must first consider whether the issue underlying the charge of ineffectiveness is of arguable merit. If not, we need look no further since counsel will not be deemed ineffective for failing to pursue a meritless issue. If there is arguable merit to the claim, we must then determine whether the course chosen by counsel had some reasonable basis aimed at promoting the client's interests. Further, there must be a showing that counsel's ineffectiveness prejudiced Appellant's case. The burden of producing the requisite proof lies with Appellant.

***Id.*** (citation omitted). "To establish prejudice, an appellant must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's action or inaction." ***Id.*** at 703 (citation omitted). "The failure to meet any one prong of the ineffectiveness test, including the prejudice prong, defeats the entire claim." ***Id.*** (citation omitted).

In general, "[a]ll relevant evidence is admissible . . . . Evidence that is not relevant is not admissible." Pa.R.E. 402. "Hearsay is not admissible except as provided by [the rules of evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. Hearsay is defined as a statement that

> (1) the declarant does not make while testifying at the current trial or hearing; and

> (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

- 13 -

Pa.R.E. 801.

> The Tender Years Hearsay Act provides the following:
>
> **(a) General Rule.—**An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. [Chapter] . . . 31 (relating to sexual offenses), . . . not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:
>
>> (1) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
>>
>> (2) the child either:
>>
>>> (i) testifies at the proceeding; or
>>>
>>> (ii) is unavailable as a witness.

42 Pa.C.S. § 5985.1(a).

> Pennsylvania Rule of Evidence 613 provides that
>
> [e]vidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
>> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
>>
>> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613. A prior consistent statement in this context may only be admitted when the prior consistent statement "predate[s] the alleged 'fabrication, bias, improper influence or motive, or faulty memory.'" ***Commonwealth v. Bond***,

190 A.3d 664, 669 (Pa. Super. 2018) (quoting Pa.R.E. 613(c)(1)). Additionally, prior consistent statements may be used to "only to rehabilitate the witness," rather than as substantive evidence. *See* Pa.R.E. 613 cmt.

In *K.A.T.*, the defendant's counsel failed to object to hearsay evidence that established a timeline for when the defendant entered a convenience store. *K.A.T.*, 69 A.3d at 703. Although the evidence was hearsay and there was no reasonable basis for counsel's failure to object, the defendant could not establish prejudice because other, independent evidence established the timeline, making the improperly admitted evidence cumulative. *Id.* at 704. Accordingly, the defendant's counsel was not ineffective. *Id.*

Additionally, since the proceeding in *K.A.T.* "was not a jury trial, and we presume that a judge does not consider evidence improperly, the defendant [could not] establish prejudice." *Id.* at 707 (Bowes, J., concurring) (citation omitted); *see also In re J.H.*, 737 A.2d 275, 279 (Pa. Super. 1999) (noting that in a proceeding where the judge is the fact-finder, he or she is presumed to consider evidence for its proper purpose and "is equipped, through training and experience, to assess the competency and relevance of proffered evidence and to disregard that which is prejudicial" (citation omitted)).

Instantly, Appellant is correct that the Tender Years Hearsay Act's provisions were not followed in permitting M.J.'s out-of-court statements to be entered into evidence for the truth of the matters asserted. *See* 42 Pa.C.S. 5985.1(a).

Additionally, we disagree with the trial court that M.J.'s out-of-court statements were admissible under Pa.R.E. 613(c). While Appellant's adjudicatory counsel questioned M.J. regarding her truthfulness, the timing of the incident in which M.J. lied to her teacher was prior to her allegations in this matter and any consistent statements made regarding Appellant's actions toward her. Moreover, the lie that M.J. told did not deal with the subject matter at hand regarding Appellant allegedly sexually assaulting her. Because a prior consistent statement can only be used if it predates the fabrication, Rule 613(c) is inapplicable in the instant matter. *See Bond*, 190 A.3d at 669.

Because the Tender Years Hearsay Act did not provide a basis to admit what was otherwise hearsay, and Rule 613(c) did not provide a basis to admit the evidence to rehabilitate M.J., Appellant's claims of ineffectiveness have arguable merit and there is no apparent reasonable basis for adjudicatory counsel's failure to object. *See K.A.T.*, 69 A.3d at 699. However, Appellant cannot demonstrate prejudice from the admission of M.J.'s prior out-of-court statements because the evidence was cumulative of her own testimony. *See id.* at 704. Moreover, the judge presiding over the adjudication is presumed to have disregarded evidence that was prejudicial to Appellant. *See id.* at 707; *J.H.*, 737 A.2d at 279. Accordingly, Appellant's adjudicatory counsel was not ineffective for her failure to object to testimony including M.J.'s out-of-court statements describing the incidents of abuse.

Appellant also challenges certain testimony that Dr. Sordoni provided, arguing that adjudicatory counsel should have objected to it. Specifically, Appellant focuses on the following portion of Dr. Sordoni's testimony:

This patient being new to me, I didn't observe any [psychological markers], but because we do a fairly extensive history, the patient's mother reported that in the last few months that she had been acting out. She was scheduled for a psychological exam on April 28th, I believe, three days after she was with us, and that she had a few markers and a few behaviors that were really not appropriate for an eight year old. She had slapped a child in school and had gotten in trouble. She had used foul language in an inappropriate place in school. She had–she had been mean to her pet at home and she had been lying and disobeying, according to the mom's report. That was new behavior, and you know, we– we know for sure that there's evidence that those kinds of behaviors often occur either at the time of or after an assault, a sexual assault or a physical assault. There's no way can prove that, but we know that the literature tells us that. The literature also tells us that children in those environments under those situations don't lie, and the fact that-the fact that is important and probably why I was called here is because she did corroborate what she had said in her interview in the medical exam.

N.T., 1/4/17, at 55-56.

Appellant asserts that adjudicatory counsel

failed to object to Dr. S[o]rdoni's testimony regarding behavioral changes arising in children who have been sexually victimized. . . . The testimony that [M.J.'s] history established that she had been sexually abused was objectionable because it went beyond the scope of the expertise for which the doctor was accepted—she was qualified as an expert in family medicine, and not in the dynamics and psychological markers of sexual abuse. . . . Additionally, the physician was permitted to testify that "children don't lie" about such matters, and she was permitted to testify that the child did not appear to be coached. These statements are of the witness' opinion on matters outside the scope of the field for which she was qualified as an expert, intruded on the province of the fact-finder, and were speculative, irrelevant and unfairly prejudicial. The testimony went beyond merely explaining the possibility of abuse

- 17 -

> absent physical evidence. It put a professional "stamp of approval" on [M.J.'s] statements.
>
> In the absence of physical evidence, an expert witness may not express an opinion that the complainant was a victim of sexual assault based upon witness accounts couched as a history.

Appellant's Brief at 23-25 (citing **Commonwealth v. Maconeghy**, 171 A.3d 707 (Pa. 2017)).

In **Maconeghy**, which was decided after the adjudication in the instant matter, our Supreme Court held in a sex abuse case that "expert testimony opining that a child has been sexually abused—which is predicated on witness accounts and not physical findings—is inadmissible." **Commonwealth v. Maconeghy**, 171 A.3d 707, 715 (Pa. 2017).

Here, Dr. Sordoni was accepted as an expert in family medicine. To the extent Appellant characterizes Dr. Sordoni's testimony as stating that M.J.'s history established that she had been sexually assaulted, this is an incorrect characterization. Dr. Sordoni did not state that a sexual assault had occurred. **See** N.T. 1/4/17, at 55-56. Dr. Sordoni referred to literature indicating that children do not lie about sexual abuse and stated that M.J. demonstrated certain psychological markers that might indicate sexual abuse, and these references were outside the scope of the expertise for which she was qualified. However, these references in the context of her testimony did not rise to the level of providing an expert conclusion that such abuse had actually occurred as in **Maconeghy**. **See Maconeghy**, 171 A.3d at 715.

As to the allegation that Dr. Sordoni's testimony bolstered M.J.'s account of the sexual assaults she suffered, and adjudicatory counsel was ineffective

for failing to object to this testimony, we note that this claim has arguable merit. However, the adjudicatory hearing judge is presumed to have disregarded such improper evidence. *See K.A.T.*, 69 A.3d at 707; *J.H.*, 737 A.2d at 279. Therefore, Appellant cannot demonstrate prejudice, and adjudicatory counsel was not ineffective regarding her failure to object to Dr. Sordoni's testimony. *See K.A.T.*, 69 A.3d at 699.

In his final issue, Appellant asserts that the juvenile court could not have disregarded the improper evidence presented without objection from counsel. Appellant's Brief at 31. In support, Appellant argues that a trial court may make findings of fact based on hearsay evidence to which an objection has not been made. *Id.* (citing *Jones v. Spidle*, 286 A.2d 366 (Pa. 1971) (noting that when hearsay evidence is admitted without an objection, it may be accorded the same weight as non-hearsay evidence).

Notably, *Jones* was a jury trial, in which no objection was made to hearsay evidence that was admitted. *See Jones*, 286 A.2d at 267. Here, however, the factfinder was a judge, who is presumed to disregard inadmissible evidence. Therefore, *Jones* is inapposite in the instant matter.

Moreover, in this matter, the judge at the adjudicatory hearing did not adjudicate Appellant delinquent on all charges. In fact, while Appellant was charged with committing acts constituting the crimes of rape, statutory sexual assault, and aggravated indecent assault, those charges were dismissed, and the juvenile court found that Appellant did not commit acts constituting rape and sexual assault. Instead, Appellant was adjudicated delinquent only as to

indecent assault charges. Accordingly, it is not only presumed that the adjudicatory hearing judge disregarded inadmissible evidence, but in this matter, the judge actually did so. On this basis, we discern no prejudice to Appellant based on any failure of adjudicatory counsel to object to the admission of hearsay evidence. *See K.A.T.*, 69 A.3d at 699.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/12/2019