J-A25016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: I.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: I.M., MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2893 EDA 2023 |

Appeal from the Dispositional Order Entered October 25, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-JV-0001570-2022

BEFORE:  OLSON, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED FEBRUARY 27, 2025**

Appellant, I.M., appeals from the October 25, 2023 dispositional order entered following his adjudication of delinquency for Receiving Stolen Property ("RSP") and Conspiracy.[1]  Appellant challenges the sufficiency of the evidence as well as the juvenile court's decision to deny Appellant's motion for mistrial. Upon review, we affirm.

The following factual and procedural history is relevant to this appeal. On December 6, 2022, at approximately 4:51 PM, Philadelphia Police Officers William Beck and Anthony Ramuno responded to a radio call for a stolen vehicle, a gray Kia Sportage with a license plate of LTR-4576 ("SUV").  Officer Beck approached the 1200 block of West Westmoreland Street and saw four young men, including then-17-year-old Appellant, exit the SUV.  As Officer

_____

[1] 18 Pa.C.S. §§ 3925(A) and 903, respectively.

Beck approached, the four men fled on foot. Officer Beck pursued Appellant and apprehended him a block away. He recovered a screwdriver from Appellant's front sweatshirt pocket. Upon return to the SUV, Officer Beck observed that the back window and steering wheel column of the SUV were both damaged. Officer Beck found an iPhone charger on the ground directly outside of the vehicle, which he knew from his experience could be used to jump-start Kia vehicles. Officer Ramuno apprehended another suspect in a nearby alleyway. Officer Beck's body camera recorded his encounter at the scene. Following Appellant's arrest, the Commonwealth filed a juvenile delinquent petition charging Appellant with RSP and Criminal Conspiracy.

The juvenile court held an adjudicatory hearing on June 2, 2023. The Commonwealth presented testimony from Officers Beck and Ramuno who testified in accordance with the above-stated facts. The Commonwealth also introduced Officer Beck's body cam video into evidence. Finally, the Commonwealth presented testimony from the SUV's owner Malierys Perez, who explained that the SUV was in perfect condition prior to being stolen, that she had not given anyone permission to use the SUV, and that when the SUV was returned to her from the police it had damage to the steering column and back window.

Appellant presented testimony from his uncle ("Uncle") as a character witness, who stated that Appellant has a reputation in the neighborhood for being a law-abiding citizen. On cross examination, the prosecutor asked Uncle if he was aware that Appellant had previously admitted to RSP and Criminal

Mischief in an unrelated case. Appellant's counsel objected and the juvenile court sustained the objection. Appellant's counsel then moved for a mistrial, which the juvenile court denied.

At the conclusion of the hearing, the juvenile court found that Appellant committed the delinquent acts of RSP and Conspiracy but deferred an adjudication of delinquency and ordered interim probation with GPS monitoring and house-restriction. The court also ordered Appellant to pay restitution to the Complainant, hand-write a 250-word apology letter, attend the Community Intervention Center program, comply with random drug screens, attend school with no unexcused absences, lateness, or suspensions, and remain arrest-free.

The juvenile court held status hearings on July 14, 2023, and August 28, 2023, and continued to defer adjudication. On September 15, 2023, after the probation department filed a motion for violation of Appellant's GPS restrictions and probation conditions, the court held a hearing and ordered Appellant to be held in secure detention at Philadelphia Juvenile Justice Services Center.

On September 21, 2023, the juvenile court determined that Appellant needed treatment, rehabilitation, and supervision and adjudicated Appellant delinquent. The court also ordered a behavioral health evaluation. On October 25, 2023, after a hearing, the juvenile court issued a dispositional order releasing Appellant from juvenile placement and once again placing him on GPS monitoring and house restriction.

Appellant timely appealed. Both Appellant and the juvenile court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Was the evidence insufficient to support Appellant's adjudication on the charge of [RSP], where the Commonwealth failed to prove that the automobile in which Appellant was an occupant had in fact been stolen, that he was in possession of it, or that he knew or believed it to be stolen?

2. Was the evidence insufficient to support Appellant's adjudication on the charge of conspiracy, where the Commonwealth failed to prove that he intended to promote or facilitate the commission of a crime, that he agreed with another person to commit a crime, or that he committed an overt act in furtherance of the agreement?

3. Did the [juvenile] court err in denying a mistrial after the Commonwealth impermissibly questioned Appellant's character witness regarding other charges that had not been resolved in criminal convictions or even juvenile adjudications?

Appellant's Br. at 3.

Our standard of review of dispositional orders in juvenile proceedings is well settled. The Juvenile Act grants broad discretion to juvenile courts when determining an appropriate disposition. *In re C.A.G.*, 89 A.3d 704, 709 (Pa. Super. 2014). We will not disturb the juvenile court's disposition absent a manifest abuse of discretion. *In Interest of J.G.*, 145 A.3d 1179, 1184 (Pa. Super. 2016).

In his first two issues, Appellant challenges the sufficiency of the evidence supporting his adjudication. When we review a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we must

- 4 -

determine "whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged." *In re V.C.*, 66 A.3d 341, 349 (Pa. Super. 2013) (citation omitted). The Commonwealth must establish each element of the crimes charged by proof beyond a reasonable doubt and may sustain its burden by wholly circumstantial evidence. *Id.* "In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." *Commonwealth v. Brooks*, 7 A.3d 852, 857 (Pa. Super. 2010). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *In re K.A.T., Jr.*, 69 A.3d 691, 696 (Pa. Super. 2013) (citation omitted).

Finally, "in a juvenile proceeding, the hearing judge sits as the finder of fact. The weight to be assigned the testimony of the witnesses is within the exclusive province of the fact[-]finder." *In re LA*, 853 A.2d 388, 391 (Pa. Super. 2004) (citations omitted). "The fact-finder is free to believe all, part, or none of the evidence presented at trial." *K.A.T., Jr.*, 69 A.3d at 696 (citation omitted).

Appellant first challenges his adjudication for RSP. The crime of RSP is defined as follows: "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been

- 5 -

stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a).  In order to obtain a conviction for RSP, the Commonwealth must prove that 1) the property was stolen, 2) the juvenile was in possession of the property, and 3) the juvenile knew the property was stolen or had reason to believe the property was stolen.  *Commonwealth v. Matthews*, 632 A.2d 570, 572 (Pa. Super. 1993)

The Commonwealth can prove that the property was "actually stolen"— like any element of any crime—through circumstantial evidence alone. *Commonwealth v. Stafford*, 623 A.2d 838, 840, 841 n.6 (Pa. Super. 1993) (*en banc*).

We have held that "the mere possession of stolen property is insufficient to permit an inference of guilty knowledge[.]" *Matthews*, 632 A.2d at 572. Rather, "there must be additional evidence, circumstantial or direct, which would indicate that the defendant knew or had reason to know that the property was stolen." *Id.*  A fact-finder may infer knowledge or belief that property was stolen from facts such as: 1) how recent the theft was, 2) the type of property, 3) the place or manner of possession, 4) alterations to the property indicative of theft, 4) a defendant's conduct while in possession of the stolen goods, and/or 5) alterations to the property indicative of theft. *Commonwealth v. Robinson* 128 A.3d 261, 268 (Pa. Super. 2015); *Commonwealth v. Marrero*, 914 A.2d 870, 873 (Pa. Super. 2006).  For example, this Court has found that "the existence of damage to the steering

column or ignition is a circumstance" that allows the court to infer that a person knew that the vehicle was stolen." *Marrero*, 914 A.2d at 873.

Finally, it is "immaterial" that the defendant was simply a passenger in a stolen car because joint possession is established when the "totality of circumstances justify a finding that all of the occupants of the vehicle were acting in concert." *In Interest of Scott*, 566 A.2d 266, 268 (Pa. Super. 1989) (citation omitted). Accordingly, "driving or riding in a vehicle that [a juvenile] knew was stolen . . . coupled with the [juvenile's] attempted escape along with his companion, [provides a] sufficient basis for the fact finder to apply the doctrine of joint possession[.]" *Id.* (citation omitted).

Appellant argues that the Commonwealth did not provide sufficient evidence to link the SUV on the police officer's body cam video to the SUV that was stolen from Ms. Perez. Appellant's Br. at 10. Appellant further contends that the Commonwealth failed to prove that Appellant was in possession of the SUV and had knowledge that the SUV was stolen. *Id.* at 14. Appellant's arguments lack merit.

Viewing the evidence in the light most favorable to the Commonwealth, the Commonwealth proved that the SUV was stolen, that Appellant knew or probably knew that the SUV was stolen, and that Appellant was in possession of the SUV.

First, the Commonwealth demonstrated that the SUV was stolen through circumstantial evidence. Ms. Perez testified that the SUV was stolen on December 5, 2022, and that the SUV was not damaged the last time that she

- 7 -

saw it. Next, Officer Beck testified that on December 6, 2022—one day later— he responded to a radio call for the stolen SUV and approached "the car." N.T. Hr'g, 5/25/23, at 8. Officer Beck testified that, based on his seven years as a police officer, he believed the SUV to be stolen because the back window of the SUV was broken, the steering wheel column was "busted," and he found an iPhone charger right outside of the SUV. *Id.* at 10. Officer Beck explained that iPhone chargers have recently been used to jump-start Kia vehicles. *Id.* Finally, Ms. Perez testified that the SUV was returned to her later that week and had the same damage that Officer Beck described. *Id.* at 22. This evidence, viewed in its totality and in the light most favorable to the Commonwealth, is sufficient to demonstrate that SUV was stolen, and that it was the same SUV that was stolen from Ms. Perez.

Next, the Commonwealth presented sufficient evidence to prove that Appellant knew the SUV was stolen or believed it was probably stolen. As discussed above, the Commonwealth presented testimony, found credible by the court, that the SUV had a damaged steering wheel column and a broken back window, both of which support a reasonable inference that Appellant knew the SUV was stolen. Moreover, when Officer Beck approached the SUV, he observed Appellant and three other young men exit the SUV and flee. *Id.* at 8. The juvenile court reasonably inferred that this was "an attempt to avoid capture." Trial Ct. Op., 2/9/24, at 7. The alterations to the SUV, coupled with Appellant's conduct, provide sufficient evidence to find that Appellant knew or probably believed the SUV was stolen.

Finally, the Commonwealth demonstrated that Appellant possessed the SUV. Appellant's knowledge that the SUV was stolen or probably was stolen, coupled with his attempt to flee with the three other occupants of the SUV, provided a sufficient basis for the juvenile court to apply the doctrine of joint possession in reaching its conclusion that Appellant possessed the SUV.

The juvenile court found the testimony of Officer Beck, Officer Ramuno, and Ms. Perez to be wholly credible and we decline to usurp the court's credibility determinations or reweigh the evidence. Thus, following our review, we conclude that the Commonwealth presented sufficient evidence to prove each element of RSP.

In his second issue, Appellant avers that the evidence was insufficient to establish criminal conspiracy. Appellant's Br. at 19. Appellant argues that the evidence did not show that Appellant agreed with anyone to commit or facilitate the commission of a crime. *Id.* He further argues that the evidence only demonstrated that Appellant "got out of a parked car that may or may not have been stolen and then fled from police." *Id.* at 20.

In order to adjudicate a juvenile delinquent for conspiracy, the Commonwealth must demonstrate that: 1) the juvenile intended to commit or aid in the commission of the delinquent act; 2) the juvenile entered into an agreement with another to engage in the delinquent act; and 3) the juvenile or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon delinquent act. *Commonwealth v. Johnson*, 985 A.2d 915, 920 (Pa. 2009); *see also* 18 Pa.C.S. § 903. "[A]n adjudication

of delinquency for conspiracy requires proof of the existence of a shared criminal intent." ***In re V.C.***, 66 A.3d 341, 349 (Pa. Super. 2013) (citation omitted). The Commonwealth does not need to prove "[a]n explicit or formal agreement[.]" ***Id.*** (citation omitted). Rather, "a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation." ***Id.*** (citation omitted). Accordingly, "[t]he conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." ***Id.*** (citation omitted).

Notably, "mere presence at the scene of a crime and knowledge of the commission of criminal acts is not sufficient. Nor is flight from the scene of a crime, without more, enough." ***Commonwealth v. Knox***, 50 A.3d 749, 756 (Pa. Super. 2012) (citation omitted). However, those factors, combined with other direct or circumstantial evidence, may provide a sufficient basis to support an adjudication of delinquency for the crime of conspiracy. ***Id.***

Our review reveals that the Commonwealth presented sufficient evidence to adjudicate Appellant delinquent for Conspiracy. As noted above, the evidence demonstrated that Officer Beck approached the reported stolen SUV and observed Appellant and three additional males exit the SUV and flee. N.T. Hr'g at 8. After Officer Beck apprehended Appellant, he found a screwdriver in Appellant's hoodie, located an iPhone charger on the ground outside of the SUV, and observed that the SUV had a broken steering column

- 10 -

and back window. *Id.* at 8, 10. Based on Officer Beck's training and experience, Officer Beck informed the court that individuals could use iPhone chargers to steal Kia vehicles. *Id.* at 10. The juvenile court opined that "the conduct of [Appellant] and the other individuals, along with circumstances surrounding such conduct, created a 'web of evidence' linking [Appellant] to a criminal conspiracy beyond a reasonable doubt." Trial Ct. Op. at 8. Viewing the evidence in the light most favorable to the Commonwealth, we agree.

In his final issue, Appellant avers that the juvenile court erred in denying his motion for a mistrial. Appellant's Br. at 20. Appellant avers that the Commonwealth impermissibly questioned Uncle, Appellant's character witness, regarding Appellant's admission to similar delinquent acts in another case where the court had deferred an adjudication of delinquency. *Id.* Appellant argues that, even though the court sustained counsel's objection, the lengthy argument on the evidentiary issue called additional attention to the prejudicial evidence. *Id.* Appellant further argues that the juvenile court considered and relied on the prejudicial evidence to discredit Uncle's testimony, as evidenced in the court's Rule 1925(a) opinion. *Id.* at 28-29. Upon review, we discern no abuse of discretion.

We review the denial of a motion for mistrial for an abuse of discretion. *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013). A mistrial is "an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." *Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (citations

- 11 -

and internal quotation marks omitted). In determining whether to grant a mistrial, the court must discern if misconduct or prejudicial error occurred and assess the degree of prejudice suffered by the Appellant. ***Commonwealth v. Nevels***, 203 A.3d 229, 244 (Pa. Super 2019). When a mistrial is sought based on allegedly prejudicial evidence, the test applied is "whether improper evidence was admitted at trial, such as would so compromise the fact finder that it would be unable to remain impartial, thereby prejudicing the defendant beyond a reasonable doubt." ***Commonwealth v. Montalvo***, 641 A.2d 1176, 1188 (Pa. Super. 1994). Notably, it is well established that "trial judges, sitting as factfinders, are presumed to ignore prejudicial evidence in reaching a verdict." ***Commonwealth v. Irwin***, 579 A.2d 955, 957 (Pa. Super. 1990).

In its opinion, the juvenile court emphasized that it sustained Appellant's objection and, therefore, Appellant did not suffer prejudice:

> The record shows that the [c]ourt ruled in favor of the [Appellant]'s objection, showing there was no prejudice, bias, or ill will toward [Appellant]. [Appellant] presented no evidence of prejudice, bias, or ill will. In the absence of the [Appellant] suffering any prejudice, the [c]ourt did not abuse its discretion. There were no grounds for granting a mistrial. The [juvenile c]ourt simply did not find [Appellant]'s character witness [to be] credible.

Trial Ct. Op. at 10. We agree.

Because the juvenile court sustained Appellant's objection, the "prejudicial" evidence was never actually admitted into evidence during the hearing. Appellant's argument—that the prejudicial evidence was highlighted by the lengthy legal argument that the prosecutor and Appellant's counsel

- 12 -

engaged in—is unavailing. This court presumes that that the juvenile court judge, sitting as the fact finder, ignores prejudicial evidence in reaching a decision, whether the evidence is highlighted or not.

Finally, we are unpersuaded by Appellant's argument that the juvenile court improperly relied on the prejudicial evidence to discredit Appellant's character evidence. On the contrary, "the trial [c]ourt simply did not find [Appellant]'s character witness [to be] credible." *Id.* It is well-settled that this Court will not usurp credibility determinations, and we decline to do so now. Moreover, mistrial is an extreme remedy reserved for incidents that deprive a defendant of a fair and impartial trial, which did not occur in this case. Because judges are presumed to ignore prejudicial evidence, the juvenile court sustained Appellant's objection, and the prejudicial evidence was not admitted into the record, we conclude that the juvenile court properly exercised its discretion in denying Appellant's motion for a mistrial.

In conclusion, the Commonwealth presented sufficient evidence to adjudicate Appellant delinquent for RSP and Conspiracy, and the juvenile court did not abuse its discretion when it denied Appellant's motion for mistrial.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/27/2025

- 13 -